# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IAN MCCOWN,

    *Plaintiff-Appellee,*

    v.

CITY OF FONTANA, a municipality;
CITY OF FONTANA POLICE
DEPARTMENT; JORGE RODRIGUEZ;
DAVID MAXSON,

    *Defendants-Appellants.*

No. 07-55896

D.C. No.
CV-05-05537-AG

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
November 17, 2008—Pasadena, California

Filed December 24, 2008
Amended April 24, 2009

Before: Pamela Ann Rymer and Milan D. Smith, Jr.,
Circuit Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

**COUNSEL**

S. Frank Harrell and Christopher D. Whyte, Lynberg & Watkins, Orange, California, for the defendants-appellants.

Jon R. Schlueter and Peter B. Schlueter, Schlueter & Schlueter, San Bernardino, California, for the plaintiff-appellee.

**ORDER**

The opinion filed on December 24, 2008, and appearing at 550 F.3d 918 (9th Cir. 2008), is hereby amended and attached to this order.

Judges Rymer and M. Smith voted to deny the petition for rehearing and the petition for rehearing en banc. Judge Korman voted to deny the petition for rehearing and recommended denying the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it. Fed. R. App. P. 35.

The Appellee's petition for panel rehearing and rehearing en banc is DENIED. Petitions for rehearing and rehearing en banc concerning the attached, amended opinion will not be permitted.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Plaintiff-Appellee Ian McCown (McCown) sued Defendants-Appellants City of Fontana, City of Fontana Police Department, Jorge Rodriguez and David Maxson (collectively, the City) alleging violations of 42 U.S.C. § 1983, including wrongful detention, false arrest, and use of excessive force in connection with McCown's arrest. After most of McCown's claims were dismissed on summary judgment, the two parties settled McCown's remaining claim for $20,000, not including attorney's fees. The parties stipulated in the settlement agreement that McCown was the prevailing party under 42 U.S.C. § 1988, and that the district court would determine the appropriate amount of fees and costs. The district court granted McCown attorney's fees in the amount of $200,000, plus $15,034.10 in costs. The City appealed the award. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2004, officers of the Fontana Police Department, responding to complaints of drug activity in a city park, approached a group of people that included McCown. The response team consisted of Rodriguez and Maxson as well as two other officers. The group began to disperse as the team of officers approached, but Maxson smelled marijuana where the group had been. An officer[1] instructed the group, includ-

---

[1]In his complaint, McCown was uncertain which of the two officers, Rodriguez or Maxson, was involved in the alleged actions. At some point

ing McCown, to get down on the ground. After the group complied, an officer approached McCown and told him to interlock his hands behind his back, and then get up on his knees. The officer then grabbed McCown's hands and belt and stood McCown up. As he did so, McCown hopped horizontally. The officer then told McCown to get down. Instead, McCown took a few stutter steps away from the officer. The officer grabbed McCown's shirt with both hands and forced him to the ground, hitting McCown in the head with his forearm or elbow as he did so. As this occurred, both McCown and the officer rolled downhill, with McCown ultimately landing on his back.

McCown claims that at this point the officers put him on his stomach and handcuffed his arms behind his back. Then, he alleges that an officer pulled out a Taser and tased him twice, once on the stomach and once on the genitals. McCown also claims he was tased twice in the chest. The City of Fontana asserts that McCown was only tased twice on the stomach. The officers arrested McCown, but they found no weapons or drugs in his possession.

On July 29, 2005, McCown filed a complaint in the Central District of California seeking damages in excess of $75,000, exclusive of costs and fees, against the City. McCown alleged three violations of 42 U.S.C. § 1983: (1) use of excessive force; (2) arrest without the benefit of probable cause; and (3) deliberate indifference on the part of the City of Fontana. The City denied all McCown's allegations and asserted several affirmative defenses.

The parties began discovery in October 2005. On December 30, 2005, McCown made a demand of $251,000 for a

during the proceedings in district court, McCown named both officers as the alleged perpetrator. Because the actual identity of the officer is irrelevant to this opinion, we merely refer to the relevant party as an officer.

global settlement, inclusive of attorney's fees. The parties were unable to reach an agreement, and continued discovery and other pretrial preparations. In June of 2006, the parties held another settlement conference, which was also unsuccessful. McCown continued to aggressively pursue discovery, requesting hundreds of documents regarding officers' training, investigations, citizen complaints, police reports, and the internal workings of the police department.

On December 21, 2006, the district court ruled on cross-motions for summary judgment. The court ruled for the City on McCown's claims of wrongful arrest, specifically finding that (1) the officers had particularized reasonable suspicion; (2) the detention was conducted in a reasonable manner; and (3) the detention was not overly intrusive. The court also granted summary judgment for the City on McCown's claims of municipal liability under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). However, the court declined to grant summary judgment on McCown's excessive force claim regarding the use of a Taser, noting that material issues of fact remained in dispute.

On March 16, 2007, shortly before trial was to commence, the parties reached a settlement on the remaining issue. The settlement agreement stipulated that the City would pay McCown $20,000, that McCown was the prevailing party "both legally and factually," and that the district court would determine the amount of attorney's fees due to McCown under 42 U.S.C. § 1988. The district court accepted the settlement agreement and vacated the trial.

In his motion before the district court for attorney's fees and costs, McCown requested $301,551.22 in attorney's fees and $15,034.10 in costs. The City strenuously opposed McCown's request, arguing that the claim should be adjusted to account for McCown's failed claims and limited success. The court considered the arguments of both parties and concluded that the figure requested was excessive. The court

reduced the award of attorney's fees to $200,000, but granted McCown all the costs requested. The City appealed the award.

## STANDARD OF REVIEW

We review attorney fee awards made pursuant to 42 U.S.C. § 1988 for abuse of discretion. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1059 (9th Cir. 2006). A trial court abuses its discretion if its fee award is based on an inaccurate view of the law or a clearly erroneous finding of fact. *Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901, 904 (9th Cir. 2005).

## DISCUSSION

**[1]** The City argues that the amount of attorney's fees awarded by the district court is unreasonable in light of McCown's limited success, and that the district court failed to adequately explain how it arrived at the final figure. Under 42 U.S.C. § 1988, a court may award the prevailing party in a § 1983 claim "a reasonable attorney's fee as part of the costs." The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In order to ensure the availability of meaningful review, a district court's disposition of a motion for attorney's fees must "provide a concise but clear explanation of its reasons for the fee award" and "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437.

### A.   The District Court's Explanation of the Fee Award

**[2]** A district court acts within its discretion in awarding fees when the amount is reasonable and the court fully explains its reasoning in making the award. Typically, a district court begins it calculation of fees by multiplying the

number of hours reasonably spent on the litigation by a reasonable hourly rate. *Id.* at 433. The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433.

**[3]** Once the district court completes its analysis of the final lodestar amount, it must explain how it arrived at its determination with sufficient specificity to permit an appellate court to determine whether the district court abused its discretion in the way the analysis was undertaken. *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ("Because the record before us is devoid of information as to the factors considered by the district court in its determination, a meaningful review is impossible. Therefore, the case is remanded . . . .").

**[4]** Here, the district court considered the applicable case law and the arguments of both parties before concluding:

> The Court finds that, based on the support provided, Plaintiff's requested fees are excessive. The declarations of Plaintiff's counsel and [John] Burton [, a local attorney who testified regarding the prevailing rates,] do not establish that counsel deserve between $400 and $550 an hour. Also, the Court finds that the hours expended are not justified by the issues involved. But the Court finds that Plaintiff achieved substantial success in a difficult case obtaining the $20,000 settlement. With reductions to the hourly rate and the number of hours involved, the Court

> GRANTS Plaintiff's Motion and awards $200,000 in attorney's fees. The Court finds that $200,000 is reasonable in light of the degree of success, the overlapping issues involved, and the public interest served by prosecuting a difficult case until the very eve of trial.

The district court provided no other explanation for the final number of hours allowed in its lodestar calculation, or how it arrived at an applicable hourly rate. The district court's failure to provide such an explanation makes meaningful review of its lodestar determinations impossible, and we have no choice but to remand the case to the district court to permit it to make the necessary calculations and provide the necessary explanations. *See Tutor-Saliba*, 452 F.3d at 1065; *Chalmers*, 796 F.2d at 1213.

## B. The Reasonableness of the Award in Light of Results Obtained

A second critical component of attorney's fee calculations under 42 U.S.C. § 1988 is found in the Supreme Court's analysis in *Hensley*. Under *Hensley*, the reasonableness of a fee award is determined by answering two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" 461 U.S. at 434. In this case, while the district court properly answered "no" to the first question, it failed to properly analyze the award in light of the second question.

### 1. *Unrelated Claims*

[5] A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit

to realize "congressional intent to limit awards to prevailing parties." *Id.* at 435. However, in a lawsuit where the plaintiff presents different claims for relief that "involve a common core of facts" or are based on "related legal theories," the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. *Id.* Instead, the court must proceed to the second part of the analysis and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

**[6]** In this case, the district court correctly treated all of McCown's claims as "related" for the purpose of determining attorney's fees. Each of McCown's claims, though brought on the basis of different legal theories against different defendants, arose from a common core of facts, namely, his arrest on June 2, 2004. Therefore, the district court did not abuse its discretion when it treated all the claims, successful and unsuccessful, as arising out of a common core of facts.

### 2. *Level of Success*

The City claims the amount of attorney's fees awarded to McCown was disproportionate to the amount he received on his one successful claim. Specifically, the City argued that because McCown only prevailed on one of his nine original claims, receiving a fraction of what he originally requested in his settlement demands, his attorney's fees and costs should be reduced to a similar fraction. The district court indicated that it was unsure whether the fact that eight of McCown's nine claims were dismissed at summary judgment "figures into the calculation" of attorney's fees. We conclude that it does.

**[7]** Although we can understand why our able district court colleague may have found the case law on this issue to be inscrutable, we hold that attorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff

has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit.[2] This conclusion follows largely from *Hensley* itself, where the Supreme Court noted that "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." 461 U.S. at 440.[3]

**[8]** Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required. *City of Riverside v. Rivera*, 477 U.S. 561, 576, 585 (1986) (Powell, J., concurring). A rule of proportionality is inappropriate, as the Court found, because it fails to recognize the nature of many, if not most, civil rights cases, in which damages may be limited by law, regardless of the importance of the civil rights at issue. *Id.* at 576-78. Indeed, it was because counsel in civil rights cases "might not have found it economically feasible" to provide services to low-income clients without a fee-shifting provision that Congress enacted § 1988. *Id.* at 579. For this reason, the district court must consider the excellence of the overall result, not merely the amount of damages won. However, the Court also clarified that, in judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should " 'give primary consideration to the amount of damages awarded as compared to the amount sought.' " *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Rivera*, 477 U.S. at 586 (Powell, J. concurring)).

---

[2]Although costs do not necessarily track fees, with some costs being fixed and independent of the number or success of claims filed, we note that the district court has discretion to reduce unreasonable costs. *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

[3]The Court in *Hensley* also noted, in dicta, that "had respondents prevailed on only one of their six general claims, [rather than five of the six,] . . . a fee award based on the claimed hours clearly would have been excessive." 461 U.S. at 436.

**[9]** Case law in this circuit provides additional guidance in how to measure a plaintiff's level of success when the plaintiff has prevailed on some, but not all his claims. For example, in *McGinnis v. Kentucky Fried Chicken*, this court echoed the holding in *Rivera* that a pro rata distribution of fees to claims "makes no practical sense," but noted that "[t]he district court must reduce the attorneys fee award so that it is commensurate with the extent of the plaintiff's success." 51 F.3d 805, 808, 810 (9th Cir. 1994). In *McGinnis*, the plaintiff successfully sued his employer on the issue of disability discrimination, winning $234,000 inclusive of punitive damages, and $148,000 in attorney's fees. After a finding that punitive damages were not allowed, the plaintiff's award was reduced to $34,000, but the district court did not reduce the attorney's fees. We vacated the district court's decision on the basis that "the district court abused its discretion by expressly refusing to relate the extent of success to the amount of the fee award." *Id* at 810.

**[10]** In this case, McCown received $20,000 in damages as part of a settlement agreement for his single remaining claim, and no other relief. The amount he received was roughly one-fourth of the "damages in excess of $75,000" that he pled in his complaint, and less than one-tenth of the $251,000 he requested in settlement,[4] which, however, included attorney's fees and costs.[5] McCown's victory clearly fell far short of his

---

[4]Although we generally refrain from referencing proposed settlement agreements in light of Federal Rule of Evidence 408, in this case both parties sought to introduce evidence of settlement discussions and negotiations, and the district court considered that evidence when making its ruling on attorney's fees. The $251,000 figure was brought to the district court's attention by McCown. The purpose behind Rule 408, to protect the confidentiality of settlement negotiations, is not served when we fail to consider those negotiations against the wishes of both parties.

[5]If we calculate the amount of attorney's fees McCown's attorneys would have been entitled to at the time of the settlement demand on December 30, 2005, using the same rate McCown used to make his ultimate request for attorney's fees, the attorneys would have received

goal; therefore, it is unreasonable to grant his attorneys more than a comparable portion of the fees and costs they requested. Although the district court need not be so mechanical as to divide the amount of fees and costs requested by the number of claims, and therefore grant one-ninth of the fees and costs, the district court should take into account McCown's limited success when determining a reasonable award.

### 3.   *Excellent Result*

McCown argues that his attorney's fees should be granted in full because, while his monetary success was limited, he achieved an "excellent result" because his success conferred a benefit on the public.

**[11]** We have previously noted that results may not be measured solely in terms of damages, and "in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society." *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996). Such a nonmonetary victory may constitute "excellent results" for the purpose of calculating attorney's fees. The Supreme Court has likewise indicated that when a decision has "served the public interest by vindicating important constitutional rights" an award of attorney's fees that is disproportionate to the actual damages may be appropriate. *Rivera*, 477 U.S. at 572.

**[12]** In setting a reasonable fee award on remand, the district court should consider whether, and to what extent,

---

roughly $70,000 for the hours they expended, leaving McCown with $180,000 minus costs. Alternatively, and more likely, McCown's attorneys would have received a one-third contingency fee amount of about $85,000, leaving McCown with roughly $165,000 minus costs. Either way, what he ultimately received represents only a small portion of what he requested in the settlement agreement.

McCown's suit benefitted the public. The public benefit of a suit must have enough of an impact to justify a fully compensatory fee award despite limited success on damages claims. To determine this impact, the district court should consider whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations. *See Rivera*, 477 U.S. at 574-76; *Morales*, 96 F.3d at 364-65. The district court may also consider the public benefit of deterring unconstitutional conduct by law enforcement officials in determining the appropriate fee. *Morales*, 96 F.3d at 364.

## CONCLUSION

**[13]** We conclude that the district court erred, both in failing to adequately explain its reasons for the award it granted to McCown, and in failing to adequately consider McCown's limited success. When awarding attorney fees on remand, the district court should adequately explain the reasonable number of hours and hourly rate it uses in calculating the fee, and appropriately adjust the award to account for McCown's limited success on claims and damages, and for any public benefit derived from his suit. We reverse and remand to the district court for reconsideration of the issue of attorney's fees and costs consistent with this opinion.

REVERSED and REMANDED.