**Ian McCOWN, Plaintiff,**

v.

**CITY OF FONTANA, a municipality, City of Fontana Police Department, Jorge Rodriguez, David Maxson, and Does 1 through 10, Defendants.**

**Case No. CV 05–5537 AG (VBKx).**

United States District Court,
C.D. California.

March 31, 2010.

John D. Muallah, John D. Mallah Law Offices, Hialeah, FL, for Plaintiff.

Jon R. Schlueter, Peter B. Schlueter, Schlueter and Schlueter, San Bernardino, CA, for Plaintiff and Defendants.

Brianne J. Skopinich, The Doctors Company, Sarah Houshiar, Barger and Wolen, Los Angeles, CA, Raymond Szu, Shelton Franklin Harrell, Jr., Melissa D. Culp, Lynberg and Watkins, Orange, CA, for Defendants.

## ORDER ON MOTION FOR ATTORNEY FEES AND COSTS

ANDREW J. GUILFORD, District Judge.

This case focuses on the amount of attorney fees to be awarded to civil rights attorneys who recovered $20,000 on a claim that the police violated the constitutional rights of the plaintiff by tasering him in his genitals when he was on the ground handcuffed. Plaintiff has requested fees of $332,151 and costs of $15,034.10. After making the required findings and required calculations, the Court concludes that an award of $148,250 in fees and $15,034.1 in costs is required.

### 1. FACTS

Plaintiff Ian McCown (McCown) sued Defendants City of Fontana, City of Fontana Police Department, Jorge Rodriguez and David Maxson (collectively, the City) under 42 U.S.C. § 1983 for constitutional violations.

On the eve of trial, after summary judgment was granted dismissing most of the claims, McCown's one remaining claim was settled for $20,000. This specifically did not include fees, and the settlement agreement provided that the Court would determine the fees and costs to be awarded, while stipulating that McCown was the prevailing party under 42 U.S.C. § 1988.

In the claim that the City paid $20,000 to settle, McCown stated that officers handcuffed his arms behind his back and tased him numerous times, including in the genitals, while an officer said "Don't f* * * with Fontana."

The case was aggressively litigated for over a year and a half. Relatively early in the case, a tentative settlement was reached requiring a $20,000 payment to McCown, who was to be the prevailing party and therefore entitled to seek attorney fees. The Fontana City Council refused to ratify this settlement, and the aggressive litigation continued for about another year, when it was settled on the eve of trial on basically the same terms previously refused by Fontana.

This matter is now before this Court after a remand was ordered in an instructive opinion. *McCown v. Fontana*, 565 F.3d 1097 (2009).

## 2. ANALYSIS

 McCown is claiming his fees under 42 U.S.C. § 1988. "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks omitted). A lawyer must place the ideals of our profession above the pursuit of profits, and lawyers are generally to be commended for the services they provide without regard to making money. But this does not mean the incentives provided by the payment of attorney fees can be ignored. In part to provide access to justice by providing incentives to plaintiff lawyers in cases like this one, such lawyers may recover reasonable attorney fees under § 1988 when their clients prevail. McCown prevailed. To determine the reasonable attorney fees in this case, this Court must look at certain factors involved in this case and then perform calculations to derive a reasonable fee.

### 2.1 The Reasonableness of the Award in Light of Results Obtained

 "Under *Hensley*, the reasonableness of a fee award is determined by answering two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *McCown*, 565 F.3d at 1103 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933).

### 2.1.1 McCown Did Not Fail to Prevail on Unrelated Claims

 "A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff[']s successful § 1983 claim." *McCown*, 565 F.3d at 1103. "Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize 'congressional intent to limit awards to prevailing parties.'" *Id.* (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). All of McCown's claims are related to his arrest. *McCown*, 565 F.3d at 1103. Though they involve "different legal theories against different defendants," each of McCown's claims "arose from a common core of facts." *Id.* Thus, this Court "should not attempt to divide the request for attorney's fees on a claim by claim basis." *Id.*

### 2.1.2 McCown's Counsel Provided a Very Meaningful Public Benefit

 "[A]ttorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown*, 565 F.3d at 1103. The Court finds that McCown's counsel have provided a very "meaningful public benefit."

 "Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required." *Id.* (citing *City of Riverside v.*

*Rivera,* 477 U.S. 561, 576, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (Powell, J., concurring)). "A rule of proportionality is inappropriate, as the Court found, because it fails to recognize the nature of many, if not most, civil rights cases, in which damages may be limited by law, regardless of the importance of the civil rights at issue." *McCown,* 565 F.3d at 1104 (citing *Rivera,* 477 U.S. at 576–78, 106 S.Ct. 2686). "Indeed, it was because counsel in civil rights cases 'might not have found it economically feasible' to provide services to low-income clients without a fee-shifting provision that congress enacted 1988." *McCown,* 565 F.3d at 1104 (quoting *Rivera,* 477 U.S. at 579, 106 S.Ct. 2686). Still, "a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown,* 565 F.3d at 1104 (quoting *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)) (further internal quotation marks omitted).

■ Here, McCown seeks fees substantially higher than the damages recovered. But also, here the public benefit is very substantial. It has been said that the greatest achievement of humans over the last thousand years is the Constitution of the United States. Its greatness is found in how it balances power in our democracy. It balances power among branches of government. And it balances power between the government and the people. The Judicial Branch has the responsibility of protecting the balances struck under the Constitution, and judges take an oath to protect and defend the Constitution. But judges would be unable to properly honor their oath if attorneys did not present cases of people harmed by excessive governmental power.

There are challenges in protecting the rights of the people against the government, and the Exclusionary Rule is generally viewed as the principal mechanism to meet these challenges. Justice Stewart has said, "[t]he rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). But civil actions against the police under Section 1983 provide both a repair and a prevention mechanism. Such actions should not be overlooked, and certainly should not be weakened by the failure to provide adequate incentives through appropriate fee awards.

McCown recovered $20,000 on his claim that he was tased in the genitals. This Court finds that, for McCown, $20,000 is a significant amount and provides the "repair" mechanism found lacking in the Exclusionary Rule. This Court further finds that the result in this case provides a "significant nonmonetary [result to] members of society." *McCown,* 565 F.3d at 1105 (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 365 (9th Cir.1996)). The Court further finds that this is an " 'excellent result[ ]' for the purpose of calculating attorney's fees." *McCown,* 565 F.3d at 1105. The Court further finds that this result serves "the public interest by vindicating important constitutional rights." *McCown,* 565 F.3d at 1105 (quoting *Rivera,* 477 U.S. at 572, 106 S.Ct. 2686). Finally, in determining the appropriate fee, the Court finds that this result deters "unconstitutional conduct by law enforcement officials...." *McCown,* 565 F.3d at 1105 (citing *Morales,* 96 F.3d at 364).

The City might have taken the facts, which it argues strongly favor the City, and sought vindication from a jury. Such vindication often occurs in this courthouse in Section 1983 cases. Or the City might have used its purportedly strong facts to negotiate a fee award reflecting its posi-

tion that McCown's counsel had not provided a benefit by attacking outrageous police conduct. Instead, the City settled with numerous provisions including *the City's* stipulation that McCown is the prevailing party on his claim that he was tased in the genitals. It's with these facts that the City and McCown present this matter to this Court, and this Court cannot ignore these facts.

## 2.2 Calculating a Reasonable Fee

"A district court acts within its discretion in awarding fees when the amount is reasonable and the court fully explains its reasoning in making the award." *McCown,* 565 F.3d at 1102. This Court was very involved with this case. It observed the skills and work product of the lawyers now seeking fees. The Court is fully aware of the lawyers' successes and failures in this case, which often are measured by how this Court ruled.

These days in the legal profession there is a movement away from billable hours and rates as a true measure of value, which perhaps reflects modern practicalities and transaction costs. *See* Nathan Koppel & Ashby Jones, *'Billable Hour' Under Attack,* Wall St. J., Aug. 24, 2009, at A1 (discussing the decline of the billable hour and the sharp rise in flat-fee contracts for legal work); Am. Bar Ass'n, Comm'n on Billable Hours, Report 1, 57 (2002), *available at* http://www.abanet.org/careercounsel/billable/ toolkit/bhcomplete.pdf (recommending a move away from the billable hour model as "critical to [the legal] profession"). With increasing frequency, clients and lawyers measure value with a flat fee based on a general analysis of a project, independent of rates and hours billed. When courts set fees, "[t]he net result of fee-setting jurisprudence ... is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Con-*

*cerned Citizens Neighborhood Ass'n. v. County of Albany,* 522 F.3d 182, 189 (2d Cir.2008) (O'Connor, J., sitting by designation, joining the opinion) (citation omitted). Overall, considering all that it observed in this case, this Court makes an equitable finding that the legal services provided that support recoverable fees should be reasonably valued at $150,000. This finding is based on all the facts presented to the Court, including those presented in the most recent submissions of the parties.

The Court further finds that the recoverable reasonable attorney fees in this case based on the following traditional mathematical lodestar analysis of hours and rates is $148,250.

■ McCown originally provided declarations by John Burton, a local attorney, and McCown's counsel John R. Schlueter, Peter B. Schlueter, and John D. Mallah, to support hourly rates of $450, $400, and $550 respectively. Each of McCown's counsel generally stated their level of expertise. Burton's declaration generally states his level of expertise and rates awarded by various courts. His declaration also states that based on his knowledge of hourly rates, counsel's rates should be set in the range of $400 to $550. To support his assessment, Burton included a list of billing rates of commercial litigation attorneys in the area.

In response, the City claimed that neither counsel's self-serving declarations nor Burton's declaration provided information on attorneys of like skill, experience, and reputation. For example, the City stated that Burton's submitted information of rates of other attorneys is not relevant to a calculation of McCown's attorneys' fees. The City argued that McCown's counsel referenced the hourly billing rates of "extremely successful attorneys at firms with offices statewide, nationwide, and worldwide who practice in entirely different ar-

eas of the law." The City argued that McCown's counsel should not necessarily merit the same rates as the attorneys listed. Thus, the City argued that the requested hourly rates are unreasonable. The Court finds that the City correctly established that McCown's fee request is overstated.

 In more recent filings, the City was particularly strident in its attacks on the skills of McCown's counsel. This resulted in an unfortunate exchange of ad hominem attacks from both sides which did not reflect favorably on the advocacy skills of those involved.

Considering all the arguments and facts presented to this Court, including those presented in the most recent submissions of the parties, this Court now makes the following findings and calculations.

The number of reasonable compensable hours expended by Peter Schlueter in this litigation was 250. The reasonable hourly rate for Peter Schlueter's attorney time is $300. This hourly rate is based on the declarations of Peter Schlueter submitted with the original motion for attorney fees and with the supplemental points and authorities, the declaration of John Burton submitted with the original motion for attorney fees, and the declaration of Dale Galipo, submitted with the supplemental points and authorities.

The number of reasonable compensable hours expended by John Mallah in this litigation was 85. The reasonable hourly rate for John Mallah's attorney time is $450. This hourly rate is based upon the declarations of John Mallah submitted with the original motion for attorney fees, the declaration of John Burton submitted with the original motion for attorney fees, and the declaration of Dale Galipo, submitted with the supplemental points and authorities, and the declarations of Peter Schlueter submitted with the original motion for attorney fees.

The number of reasonable compensable hours expended by Jon Schlueter in this litigation was 100. The reasonable hourly rate for Jon Schlueter's attorney time is $350. This hourly rate is based upon the declaration of Jon Schlueter submitted with the original motion for attorney fees and with the supplemental points and authorities, the declaration of John Burton submitted with the original motion for attorney fees, and the declaration of Dale Galipo, submitted with the supplemental points and authorities, and the declarations of Peter Schlueter submitted with the original motion for attorney fees.

Together, these fees total $148,250.

Overall, many factors are involved in this Court's conclusion that McCown will not recover the full amount of fees he requests. These factors certainly include the results ultimately obtained. They also include a reduction in the hourly rate to reflect appropriate fees for the counsel involved under the economic realities operating over the period in which the services were performed, and a reduction due to unnecessary hours spent on acrimonious exchanges between the parties, and on dealing with unnecessary procedural mishaps during the litigation.

### 2.3 Costs

Adding to the fees in this case, the Court finds that the requested costs of $15,034.10 are reasonable and recoverable.

### 2.4 Interest

Interest has been mentioned in papers filed, but the issue of interest has not been fully briefed by all parties. If McCown seeks interest, he must file by April 14, 2010, a brief not exceeding five pages setting forth authorities for his recovery of interest, plus calculations of the proper amount of interest to be awarded through April 30, 2010, with a daily rate provided

for time after April 30, 2010. The City may file an opposition by April 28, 2010.

### 3. CONCLUSION

The Court GRANTS McCown $148,250 in attorneys' fees and $15,034.10 in costs.

IT IS SO ORDERED.