**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL VARGAS,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>AMBER HOWELL; STEVE MCBRIDE; RICHARD GLOECKNER; JAMES GOODSON; RUSSELL TAYLOR; GARY PATTERSON; SHAUN BRILEY; JOHN OLSON; DEBORAH KNOTTS,<br>*Defendants-Appellees.* | No. 18-15513<br><br>D.C. No.<br>2:14-cv-01942-JCM-CWH<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted July 8, 2019
Seattle, Washington

Filed February 5, 2020

Before: Paul J. Watford and Eric D. Miller, Circuit Judges,
and Roger T. Benitez,* District Judge.

---

*The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

Opinion by Judge Miller;
Dissent by Judge Benitez

## SUMMARY[**]

### Attorney's Fees

The panel affirmed in part and reversed in part the district court's award of attorney's fees following settlement in an action brought pursuant to 42 U.S.C. § 1983, and remanded.

The district court awarded just 10 percent of the attorney's' fees claimed by plaintiff, concluding that "the vast majority of hours expended in this case were unreasonable."

The panel held that the district court provided an inadequate explanation for such a significant cut. The panel stated that the district court appeared to have employed a "mechanical" approach, simply assuming that because plaintiff settled for 10 percent of what he sought, his lead lawyer should recover only 10 percent of the requested fees. The panel noted, among other things, that although the $99,999 settlement was less than what plaintiff initially sought, it was far more than a nuisance settlement. Moreover, no ruling from the district court had significantly weakened or limited plaintiff's claims. The panel remanded for a recalculation of the number of hours reasonably

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attributable to plaintiff's attorney, R. Todd Terry. The panel further noted that the record did not suggest that this case gave rise to any special non-monetary benefit that would warrant consideration in determining an appropriate fee award.

The panel held that the district court erred by denying fees for work performed by two former attorneys on the basis that their new law firm lacked standing to seek fees for work the attorneys performed at a different firm. The panel stated that 42 U.S.C. § 1988 vests the right to seek attorney's fees in the prevailing *party*, not the attorney. Plaintiff—not his attorneys—moved for attorney's fees and costs, and plaintiff unquestionably had standing to seek fees, including for the work of attorneys who represented him for more than nine months.

The panel found no abuse of discretion in the district court's reduction of hours and rates of the other attorneys that worked on the case. The panel stated that had it been called upon to determine a reasonable fee in the first instance, the panel's calculation might have differed from that of the district court, but that did not mean that the district court abused its discretion.

Dissenting from the majority's conclusion in Part II that the district court's approach was mechanical and its explanation inadequate, Judge Benitez stated that he had no difficulty understanding why the district court made the fee award it did and he was confident that it was the result of reasonable and experienced discretion.

## COUNSEL

Kendelee L. Works (argued), Christiansen Law Offices, Las Vegas, Nevada, for Plaintiff-Appellant.

Theresa Haar (argued), Senior Deputy Attorney General; Steve Shevorski, Head of Complex Litigation; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Defendants-Appellees.

## OPINION

MILLER, Circuit Judge:

Daniel Vargas sued various Nevada officials under 42 U.S.C. § 1983. After reaching a settlement, he sought attorney's fees as the prevailing party. The district court awarded just 10 percent of the fees Vargas claimed, and Vargas appealed. We affirm in part, but because we conclude that the district court provided an inadequate explanation for such a significant cut, we reverse in part and remand for further proceedings.

I

In 2013, a Nevada state court sentenced Vargas, then 16 years old, to juvenile detention for car theft. Vargas was transferred to the Nevada Youth Training Center in Elko, Nevada, where, he alleges, he was beaten, hogtied, and deprived of necessary medical care. He then brought this action in the District of Nevada against the administrator and various employees of the Nevada Division of Child and Family Services, as well as numerous officers and employees of the Youth Training Center (collectively, the "officers"). He asserted claims under section 1983 for

excessive force and denial of medical care, as well as state-law tort claims.

After more than two years of litigation, including extensive discovery, the parties entered into a settlement under which Vargas received $99,999. The settlement agreement stated that Vargas had "the right to and will seek reasonable attorneys' fees, costs and interest in this matter as the prevailing party pursuant to 42 U.S.C. § 1988," but that the officers "reserve[d] the right to oppose that request."

Vargas requested over $257,000 in attorney's fees and $39,000 in costs. About 80 percent of the fees were for work performed by the Christiansen Law Offices, with the bulk of those fees (over $184,000) attributable to R. Todd Terry, one of the firm's senior litigators. The remainder of the fees were for two other firms. One was Lasso Injury Law, where Al Lasso had been co-counsel for Vargas. The other was Gentile Cristalli Miller Armeni Savarese. That firm did not work on the case, but two of its attorneys, Paola Armeni and Colleen McCarty, had initially been co-counsel for Vargas while employed at a different firm. During the course of the litigation, their former firm had dissolved and they had withdrawn from representing Vargas, but their new firm sought fees for the work they had performed.

The district court concluded that "the vast majority of hours expended in this case were unreasonable." The court applied an "across-the-board percentage cut" of 90 percent to the number of hours claimed by Terry. The court noted that Vargas's supplemental discovery disclosures had estimated his damages at over $1 million, but "[t]he case ultimately settled for $99,999, less than 10% of the lower bound of any of plaintiff's estimated damages," and Vargas "did not obtain injunctive relief or any other public benefit." The court added that "[i]t was unreasonable for . . . Terry to

incur over $184,000 in attorney's fees himself before realizing the value of his client's case was $99,999." The court also reduced the rate claimed by Terry and several of his colleagues, and it excluded hours claimed for various tasks that it deemed unnecessary.

The district court reduced Lasso's hours by excluding various time entries that it considered excessive or duplicative. And it reduced his hourly rate because "neither the motion nor his affidavit explain his experience or qualifications."

The district court declined to award any fees for Armeni's and McCarty's work, noting that Armeni had withdrawn from the case well before it settled and that the settlement "was not due to the efforts of her or her associates." The court concluded that Armeni and McCarty's new firm did not have "standing to seek fees based on a contingency fee arrangement negotiated between" Vargas and their former firm.

In total, the district court awarded fees of about $26,000, plus $16,000 in costs.

## II

We begin by considering the 90 percent cut in Terry's hours, a cut that accounted for most of the reduction in the overall fee award.

A district court, "in its discretion, may allow the prevailing party" in a civil rights action "a reasonable attorney's fee." 42 U.S.C. § 1988(b). The Supreme Court has instructed that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times

a reasonable hourly rate," an approach commonly known as the "lodestar" method. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Determining the number of hours reasonably expended requires "considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Reasonable hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895.

Although the analysis begins by multiplying a reasonable number of hours by a reasonable rate, it does not end there. Our case law on the subject has been criticized in a number of respects, and we have observed that some district courts have found it "inscrutable." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). But no one has complained that it unduly restricts the number of factors a court may consider. To the contrary, we have identified no fewer than 12 factors "to be considered in the balancing process." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Here, the district court gave great weight to "the important factor of the 'results obtained,'" recognizing that if the plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 436 (1983). The court concluded that Terry "billed an unreasonable amount of time on a case that settled for a small fraction of plaintiff's requested damages award."

In reviewing that conclusion, we are mindful that our role is a limited one: "District court awards of attorney's fees under section 1988 are reviewed for abuse of discretion." *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991). That

deferential standard "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437. At the same time, however, the district court must give some "'concise but *clear*'" explanation of "how it came up with the amount." *Moreno*, 534 F.3d at 1111 (quoting *Hensley*, 461 U.S. at 437). And the larger the difference between the fee requested and the fee awarded, the "more specific articulation of the court's reasoning is expected." *Id.*; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) ("[A] reduction of 88 percent requires a more specific explanation."); *Gates v. Deukmejian*, 987 F.2d 1392, 1399–1400 (9th Cir. 1992).

We conclude that given the size of the cut the district court imposed, the court's explanation was inadequate. We do not take issue with the general principle that a district court may reduce a fee award if "'the amount of recovery' was modest relative to the amount [the plaintiff] initially sought." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1029 n.11 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 436). Nor do we question the applicability of that principle when a case is resolved through settlement. If a case settles for a small fraction of what the plaintiff sought, it will often be fair to say that "the degree of success obtained" by plaintiff's counsel was low. *Hensley*, 461 U.S. at 436; *see Caudle*, 224 F.3d at 1029 n.11.

In some cases, the disparity between the amount sought and the amount of a settlement can be so great that the plaintiff's low level of success, by itself, justifies a large reduction in the fee award. For example, a substantial reduction would be warranted in a case that settled solely for its nuisance value. Indeed, it can be appropriate to deny fees

altogether "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); *see also Fletcher v. City of Fort Wayne*, 162 F.3d 975, 976 (7th Cir. 1998) ("[F]or trivial recoveries the only reasonable award of fees is zero."). In this case, although the $99,999 settlement is less than what Vargas initially sought, it is far more than a nuisance settlement. Had the officers believed that they were settling the case for its nuisance value, or that the settlement was so low that Vargas had not really prevailed, they could have insisted that the agreement say so. Instead, while they retained the right to challenge the fee award, they did not question that Vargas had genuinely prevailed in the litigation.

A reduction in fees could also be appropriate if a settlement were prompted by adverse court rulings that doomed the plaintiff's chances of achieving anything more than "partial or limited success." *Hensley*, 461 U.S. at 436. In *McCown*, for example, we held that a district court abused its discretion by awarding more than $215,000 in attorney's fees and costs even though the plaintiff settled for only $20,000 after eight of his nine claims were dismissed. 565 F.3d at 1100, 1103–04. Emphasizing that the amount recovered by the plaintiff was a fraction of the amount sought, we held that since "McCown's victory clearly fell far short of his goal," it was unreasonable "to grant his attorneys more than a comparable portion of the fees" requested. *Id.* at 1104–05. But here, although the parties had conducted discovery, no ruling from the district court had significantly weakened or limited Vargas's claims against the officers.

Crucially, even as we reversed the fee award in *McCown*, we cautioned that "the district court need not be so

mechanical as to divide the amount of fees and costs requested by the number of claims." *Id.* at 1105. Here, the district court appears to have employed just such a "mechanical" approach, simply assuming that because Vargas settled for 10 percent of what he sought, his lead lawyer should recover only 10 percent of the fees requested.

The effect of that approach is to punish Vargas's attorneys for pursuing what might well have been a sensible negotiation strategy. A reasonable attorney representing Vargas could have made the strategic choice to present an initial damages estimate as high as possible. Of course, an unrealistically high estimate could make settlement talks unproductive, and an attorney must also ensure that any estimate presented to the court is "likely [to] have evidentiary support after a reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b)(3). But within those limits, Vargas's attorneys could reasonably have decided that by offering a high damages estimate, they would retain "room to later grant concessions, while still reaching a favorable settlement." Stephen J. Ware, *Principles of Alternative Dispute Resolution* § 3.15, at 313 (3d ed. 2016). Had they started from a lower number, the settlement might have been lower. Whether or not that is the strategy Vargas's attorneys had in mind, they should not be faulted for negotiating a settlement.

The district court's approach threatens to create perverse incentives for lawyers representing civil rights plaintiffs. If fees are reduced whenever a case settles for less than the initial demand, lawyers will be encouraged to make only modest initial demands, limiting the potential recovery for their clients. And as the litigation proceeds, they will be encouraged to refuse to lower their demands, making

settlement more difficult and prolonging the litigation. No one will be well served by that approach.

The district court also noted that the attorney's fees sought exceeded the amount recovered in the settlement. That is a legitimate consideration in evaluating the reasonableness of the work performed, but the court appears to have treated it as dispositive, stating that "[i]t was unreasonable for . . . Terry to incur over $184,000 in attorney's fees himself before realizing the value of his client's case was $99,999." We have held just the opposite: "It is *not* per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013) (emphasis added). That holding reflects the Supreme Court's admonition that there need not be strict proportionality between the damages recovered and the fees awarded. In *City of Riverside v. Rivera*, 477 U.S. 561 (1986), for example, the Court affirmed an award of more than $245,000 in attorney's fees to a prevailing party who had recovered only $33,350 in damages, and it suggested that "[a] rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988." *Id.* at 564–65, 576 (plurality opinion); *accord id.* at 585 (Powell, J., concurring in the judgment); *see McCown*, 565 F.3d at 1104 ("A rule of proportionality is inappropriate.").

In addition, the district court's comparison of the recovery and the fees overlooked that the recovery was the product of a settlement that expressly contemplated an award of fees. The court was therefore wrong to suggest that Terry should have "realiz[ed] the value of his client's case was $99,999" and spent fewer hours working on it. In fact, the value of the settlement was $99,999 *plus fees*.

Although the district court also stated that Terry's hours "demonstrate[d] an inefficient use of resources" because "a senior litigator" should not have performed tasks such as "meticulously review[ing] the case file," that reasoning does not support the 90 percent cut. We have held that a court may not reduce a fee award based on "speculation as to how other firms would have staffed the case" or "whether it would have been cheaper to delegate the work to other attorneys." *Moreno*, 534 F.3d at 1114–15. A conclusory statement about inefficiency can justify "no more than a haircut" in a fee award; it cannot justify a 90 percent reduction. *Id.* at 1116; *see Gonzalez*, 729 F.3d at 1203 ("[T]he district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did.").

Nor is the 90 percent cut supported by our decision in *Johnson v. MGM Holdings, Inc*, 943 F.3d 1239 (9th Cir. 2019). In that case, which did not involve section 1988, we affirmed the district court's 25 percent reduction of counsel's requested hours because the court explained why such a reduction was appropriate and then "conducted a percentage-of-recovery analysis as a cross-check." *Id.* at 1242. Significantly, we noted that "the percentage-of-recovery method is *not* typically used in civil rights cases." *Id.* at 1242 n.3 (emphasis added). And we emphasized that the percentage-of-recovery computation was not the sole basis for a reduction in fees; it merely confirmed the reasonableness of a reduction for which the district court provided no fewer than six different well-articulated—and apparently unrebutted—reasons. *Id.* at 1243.

To be clear, we do not hold that it would necessarily be an abuse of discretion to reduce the fee award in this case based on a reasoned finding that Vargas achieved limited success, or based on findings that particular tasks performed

by Terry were unnecessary. We merely reaffirm our prior decisions holding that a significant reduction requires a more thorough explanation, and we conclude that the court did not adequately justify the dramatic cut that it imposed. We therefore remand for a recalculation of the number of hours reasonably attributable to Terry.

We briefly address one additional argument raised by Vargas. The district court determined that Vargas "did not obtain injunctive relief or any other public benefit," and Vargas contends that he in fact achieved non-monetary success because the policies of the Nevada Youth Training Center now prohibit "hobbling." *See Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996) (district court must consider a prevailing plaintiff's "nonmonetary success"). In developing that argument, Vargas moves to supplement the record with various documents produced in discovery but not made a part of the district court record. Although we have "inherent authority to supplement the record in extraordinary cases," *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003), we see no reason to depart from the general rule that "documents not filed with the district court cannot be made part of the record on appeal." *Rudin v. Myles*, 781 F.3d 1043, 1057 n.18 (9th Cir. 2014); *see* Fed. R. App. P. 10(a).

Vargas's argument is unpersuasive in any event. The settlement agreement contained no admission of fault by the officers, and it did not compel any change in policy. While all successful section 1983 actions benefit the public generally by helping to encourage compliance with the law, the record does not suggest that this case gave rise to any special non-monetary benefit that would warrant consideration in determining an appropriate fee award.

## III

We next consider the district court's decision to deny fees for the work performed by Armeni and McCarty. The court reasoned that Armeni and McCarty's new firm lacked standing to seek fees for work those attorneys had performed at a different firm. In focusing on the attorneys' standing, however, the district court asked the wrong question. We have explained that "[s]ection 1988 vests the right to seek attorney's fees in the prevailing *party*, not her attorney." *Pony v. County of Los Angeles*, 433 F.3d 1138, 1142 (9th Cir. 2006) (emphasis added). Vargas—not his attorneys—moved for attorney's fees and costs, and Vargas unquestionably has standing to seek fees, including for the work of Armeni and McCarty, who represented him for more than nine months.

To be sure, Vargas signed a contingent fee agreement with Armeni and McCarty's previous firm, and it does not appear that he has any agreement with their current firm. But that does not affect Vargas's right to seek attorney's fees as a prevailing party. Under section 1988, "an 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012); *see also Blum*, 465 U.S. at 895–96; *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001). Whether Vargas's agreement with the now-dissolved firm gives Armeni and McCarty any right to collect from Vargas is a separate matter. Its resolution does not affect Vargas's statutory entitlement to fees.

IV

Vargas also challenges the district court's reductions of his other attorneys' hours and rates. "Reasonable people may differ as to what number of hours was reasonable to spend on this case. But once we are satisfied that the district court has considered the appropriate factors for the appropriate reasons, our reviewing function is finished." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 486 (9th Cir. 1988) (emphasis omitted). Had we been called upon to determine a reasonable fee in the first instance, our calculation might have differed from that of the district court, but that does not mean that the court abused its discretion.

As to the number of hours, Vargas raises three objections. First, the district court excluded hours that Vargas's counsel spent preparing a motion for reconsideration of an order dismissing one of Vargas's claims; the court noted that no such motion was filed. Vargas argues that his counsel had a duty to explore all potential theories that might benefit him, even if they turned out not to justify filing a motion. We agree that work spent investigating possible avenues of relief is not necessarily unreasonable just because those avenues prove to be dead ends. And an attorney might reasonably prepare a motion only to decide, upon further reflection, that the motion is not worth filing. But Vargas did not explain to the district court why preparing this particular unfiled motion was reasonable. "[T]he district court is in the best position to discern what work was unnecessary," and we see no abuse of discretion in the court's determination that, in these circumstances, the time spent on the motion for reconsideration was not well spent. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Second, the district court awarded less than Vargas sought for the reply brief in support of his fee request. The court emphasized that "only one sentence in the entire brief contains a case citation." We hesitate to endorse a rule that would tie a lawyer's compensation to the number of citations contained in a brief. Our experience suggests that even without such a rule, few briefs suffer from excessive brevity or a paucity of citations. But the court also explained that Vargas did not specify "who prepared the reply brief, what his or her billing rate was, and how many hours he or she spent preparing the brief." It was Vargas's burden to "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433. The court did not abuse its discretion in determining that Vargas did not meet that burden.

Third, the district court reduced Lasso's hours by excluding time entries that it considered excessive or duplicative, such as time spent with undisclosed witnesses, time spent revising a complaint that had already been filed, and time spent attending depositions and mediations in which Lasso did not participate. Lasso's declaration offered no explanation for those apparently redundant tasks. The district court's order provided a clear articulation of its reasoning for excluding the hours. That is all that is required. *See Moreno*, 534 F.3d at 1111–12.

Vargas's objections to the district court's rate reductions fare no better. Parties seeking fees have the "burden of producing evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chaudhry*, 751 F.3d at 1110 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). In evaluating the requested rate, "judges are justified in relying on their own knowledge of customary

rates and their experience concerning reasonable and proper fees." *Ingram*, 647 F.3d at 928.

To identify prevailing market rates, the district court examined Vargas's evidence of his attorneys' rates, skill, and experience. It also examined the officers' evidence, which consisted of a declaration by Kirk Lenhard, a Nevada attorney. Vargas argues that the district court should have disregarded the Lenhard declaration because Lenhard was not timely disclosed as a witness. Vargas never raised that objection below, so we will not consider it. *See Manta v. Chertoff*, 518 F.3d 1134, 1144 (9th Cir. 2008). Vargas also contends that Lenhard identified market rates using cases that were not comparable to this one. But all three of Lenhard's cases involved civil litigation, each with multiple claims, and two involved both state and federal law. The district court is more familiar with the Nevada legal market than we are, and it could reasonably have chosen to rely on those cases.

Vargas further argues that the district court abused its discretion by reducing Lasso's hourly rate to that of a first-year associate. The court did so because Vargas did not explain Lasso's experience or qualifications. Given the limited information Vargas provided, it was not an abuse of discretion to reduce Lasso's hourly rate.

Finally, Vargas contends that, having already reduced Terry's hours, the district court engaged in impermissible double counting when it also reduced his rate. We have cautioned courts against using the "simplicity of a given task as justification for a reduction" in both an attorney's hours and his or her hourly rate. *Moreno*, 534 F.3d at 1116. While we reverse the district court's decision to reduce Terry's hours, we note that its reasons for doing so—limited success and inefficient use of resources—were different from its

reasons for reducing Terry's rate—an assessment of prevailing market rates in the community for a similarly experienced litigator. That was not double counting.

**AFFIRMED in part, REVERSED in part, and REMANDED. Motion to supplement DENIED.**

The parties shall bear their own costs.

BENITEZ, District Judge, dissenting in part:

I respectfully dissent from the conclusion in Part II that the district court's approach was mechanical and its explanation inadequate.

Not too long ago, while reversing a § 1988 award because it was *not* adjusted downward for limited success, we empathized with our district court colleagues who "may have found the case law on this issue to be inscrutable." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). Today, we reverse a § 1988 award that *was* adjusted downward because of limited success – not necessarily because the adjustment was too large but because a large adjustment requires a larger explanation.

"Under *Hensley* [*v. Eckerhart*, 461 U.S. 424, 436 (1983)], of course, 'the most critical factor in the final determination of fee awards is the degree of success obtained.' Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J. concurring). "Indeed, 'the most critical factor' in

determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S., at 436). And this is what the district court did. As the majority recognizes, the district court "gave great weight" to the "results obtained" factor. *Supra* at 7.

Attorney's fees awarded under 42 U.S.C. § 1988 "must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown*, 565 F.3d at 1103. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

In judging the plaintiff's success and the reasonableness of hours, "a district court should 'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Rivera*, 477 U.S. at 586). "[T]he district court's calculation of an award need not be done with precision." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). "[W]e do not require 'an elaborately reasoned, calculated, or worded order and a brief explanation of how the court arrived at its figures will do . . . .'" *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988)).

Percentages and across-the-board cuts are sometimes necessary tools for district courts fashioning reasonable fee awards. When percentages are used, district courts do have a responsibility to set forth a "concise but clear" explanation of their reasons for choosing a given percentage reduction and a duty to independently review the applicant's fee

request.  *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992).

That is precisely what the district court did in this case. In a ten-page decision, the district court identified the correct legal standards, provided an explicit lodestar calculation, determined the number of reasonable hours spent and clearly explained why the number of hours was reduced.  It determined a reasonable hourly rate, engaged in a meaningful comparison of damages sought to damages awarded, noted the lack of public benefit achieved, and provided a concise and clear explanation of its reasons for the fees awarded.

In this case, the district court began with the most important factor, *i.e*., the limited degree of success.  It noted the plaintiff sought general damages between $1,136,453 and $1,541,833 plus medical expenses of $119,651, but settled the case for only $99,999.  According to *Farrar* and *Hensley*, the district court should be able to stop there. "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness." *Farrar*, 506 U.S., at 115 (citing *Hensley*, 461 U.S., at 430, n. 3).  Nonetheless, the district court went farther.  It reduced the number of reasonable hours, calculated a lodestar amount, and recited the *Kerr* factors.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (adopting 12 factors for consideration in attorney's fees cases). Notably, our *Kerr* decision arose from a case where the district court awarded less than 50% of fees requested with a single sentence explanation: "'The court believes that amount to be reasonable under all the circumstances of this case.'"   *Id.* at 69.   In this appeal, the district court's

explanation was considerably longer – spanning most of its ten-page decision.

The district court addressed *Kerr* factor 1 without saying it directly. (Factor 1 is the "time and labor required.") The district court said that plaintiff's counsel spent unreasonable amounts of time on drafting motions, reviewing discovery, and getting up to speed on the case. Regarding *Kerr* factor 3, which is the skill requisite to perform the legal service properly, the district court pointed out that plaintiff's senior attorney spent an inordinate amount of time on tasks that could have been done by attorneys of lesser skill or paralegals. The district court noted a law clerk drafted three deposition notices in half an hour, in contrast to when the senior attorney drafted deposition notices, it took him 2.10 hours to draft four notices. Additionally, the district court found that the itemized billings contained "numerous redundancies," and fees billed for a motion for reconsideration that was never filed. Of course, the district court addressed the subject of *Kerr* factor 8, *i.e.*, the amount sought and the case results. The district court concluded that it was unreasonable for the senior attorney to bill $184,000 in fees before realizing that the value of his client's case was $99,999. The district court also explained how it arrived at the $450 hourly rate for attorney Terry, relying on a declaration and other local cases (which is *Kerr* factor 9). In reducing the award for a reply brief, the district court pointed out not only that the document offered only one case citation, but that the author was not named, nor the author's billing rate, nor how many hours were spent preparing the brief. *Kerr* factor 2, the novelty and difficulty of the question involved, and *Kerr* factor 12, awards in similar cases, were implicitly considered by the district court when it explained that spending 535 hours to win a purely monetary judgment of $99,999 would constitute an impermissible windfall to

plaintiff's counsel and that reducing the award will not deter qualified attorneys from pursuing other civil rights litigation.

Some of the remaining *Kerr* factors were not addressed by plaintiff or were lightly touched upon. For example, regarding *Kerr* factor 4, in the fee motion counsel said that his law firm could have spent the 330 hours on other litigation but offered no specifics. For *Kerr* factor 6, counsel said the fee was contingent, but did not elaborate. Counsel said that time limitations imposed by the client or circumstances were not a factor (*Kerr* factor 7). The district court did not spell out its thoughts on *Kerr* factor 10: the undesirability of the case. But with 25 years of experience in private practice and 20 more years on state and federal benches, it is a pretty good bet that the district judge had accurately considered the factor.

In other words, the district court provided the required concise but clear explanation for its decision, evincing the district correctly exercised its discretion and that the award was reasonable. *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019) ("The district court provided a clear and concise explanation for its lodestar calculation and its reasonableness cross-check, enabling us to determine that the district court's award was reasonable, based on the record before it – our case law requires nothing more.") (citing *McCown*, 565 F.3d at 1102). *Johnson* recently approved a 25% across the board cut to a lodestar calculation – ultimately approving an $184,000 fee rather than the $350,000 fee plaintiff requested upon settling a class action.

As was the case in *Johnson*, in this case I have no difficulty understanding why the district court made the fee award it did and I am confident that it was the result of reasonable and experienced discretion. Yet, in view of our inscrutable jurisprudence, it is understandable that the

majority would try to clarify where the district court fell short. I do not agree, however, that it has succeeded. Our opinion today does nothing to de-mystify the "inscrutability" of our law on the subject, and it does nothing to clarify for trial court judges what it is that they must do. Falling short of clarifying our jurisprudence, the majority reverses, requiring a "more thorough explanation" from the district court without setting forth how much more thorough or when an opinion will be long enough to be deemed adequate. Ultimately, our opinion today merely increases the writing burden on trial court judges.