Patrick McGINNIS, Plaintiff–Appellee,

v.

KENTUCKY FRIED CHICKEN OF CALIFORNIA, Defendant–Appellant.

No. 93–35667.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 1, 1994.*

Decided Dec. 15, 1994.

As Amended April 5, 1995.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Stanley Weiner, Jones, Day, Reavis & Pogue, Dallas, TX, and Steven T. Catlett, Jones, Day, Reavis & Pogue, Columbus, OH, for defendant-appellant.

Susan B. Mindenbergs and Jeffrey L. Needle, and Patricia S. Rose, Seattle, WA, for plaintiff-appellee.

Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case involves two issues, the retroactive availability of punitive damages and attorneys' fees. Both are questions of Washington law, but Washington state law applies federal law.

## I. FACTS

Mr. McGinnis worked as a manager for Kentucky Fried Chicken. He developed cancer and required surgery. He returned to work shortly after his surgery, but required continuing treatment. For six weeks, he opened the restaurant each morning, drove thirty miles for his radiation treatment, then returned to the restaurant and worked until 11:00 at night. He developed depression for which he needed medication and therapy. He found himself unable to work the fifty to eighty hours per week he had put in before, because of the time he needed for treatment, the side effects of his radiation therapy, and depression. He asked his supervisors to reduce his hours, assign him to a lower volume store, and assign an assistant manager to his store. His evidence suggested that Kentucky Fried Chicken would ordinarily assign an assistant manager to a location as busy as his. The company refused to accommodate Mr. McGinnis's requests and fired him. The date of termination was July 24, 1991, which is significant for retroactivity analysis.

He sued under a Washington statute prohibiting disability discrimination, and on two common law theories, intentional and negligent infliction of emotional distress. The district court dismissed the common law theories, but Mr. McGinnis was allowed to recover for emotional distress anyway, under the actual damages provision of the disability discrimination statute. The case went to jury trial, and Mr. McGinnis won. The jury verdict established that Mr. McGinnis's handicap was a substantial factor in Kentucky Fried Chicken's decision to discharge him, and that Kentucky Fried Chicken failed to reasonably accommodate his handicap. The jury awarded McGinnis $24,000 in lost

earnings, $10,000 for emotional distress and $200,000 in punitive damages. The district court awarded McGinnis $127,242 in attorney fees and $20,996.97 in costs.

## II. ANALYSIS

Kentucky Fried Chicken appeals. It claims that punitive damages were not available, and that the attorneys' fees award was excessive. It does not challenge the liability determination or the award of compensatory damages, including emotional distress damages.

### 1. Punitive Damages

The punitive damages issue is one of state law, but the state law issue depends on federal law. The Washington statute at issue allows such remedies as are available under the federal Civil Rights Act of 1964 as amended. The relevant portion of the state law read as follows:

> Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover actual damages sustained by him, or both, together with the costs of suit including a reasonable attorney's fees *or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964.*[1]

(emphasis added). Washington Rev.Code § 49.60.030(2). Washington law does not allow punitive damages unless expressly allowed by statute. *Barr v. Interbay Citizens Bank of Tampa*, 96 Wash.2d 692, 635 P.2d 441, 443 (1981). Because there is no independent Washington basis for the award of punitives, Mr. McGinnis may not recover such damages unless they are a "remedy authorized by ... the United States Civil Rights Act of 1964."

Punitive damages are authorized by that statute today. Pub.L. 102–166, 105 Stat. 1071 (1991) (codified at 42 U.S.C.A. § 1981a(1) (West Supp.1994)). They were authorized when Mr. McGinnis's case went to trial. But they were not authorized when

1. The statute was amended in 1993 to add, "as amended" to the end of this sentence.

Kentucky Fried Chicken failed reasonably to accommodate his handicap, and fired him. That is the time which controls the outcome, under *Landgraf v. USI Film Prods.*, —— U.S. ——, ——, 114 S.Ct. 1483, 1488, 1505–06, 128 L.Ed.2d 229 (1994). The Supreme Court has held that the punitive damages provision of the Civil Rights Act of 1991 does not apply to conduct occurring before November 21, 1991, the date on which the law became effective. *Id.* Because the actions Mr. McGinnis complains of all occurred prior to November, 1991, *Landgraf* controls, and requires us to vacate the award of punitive damages. *Rodriguez v. General Motors Corp.*, 27 F.3d 396, 398 (9th Cir.1994).

Mr. McGinnis argues that punitive damages are available under Washington law, even though they are not available under federal law. We cannot reconcile his argument with the plain adoption by the Washington statute of federal remedies. *Xieng v. Peoples Nat'l Bank of Washington*, 120 Wash.2d 512, 844 P.2d 389 (1993), upon which he relies, followed our earlier interpretation of retroactivity of the Civil Rights Act of 1991, in *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir.1992). *Xieng* involved expert witness fees, not punitive damages, so we need not determine whether it is still the law of Washington for purposes of expert witness fees. With respect to punitive damages, any inference that the 1991 Civil Rights Act amendments are retroactive cannot survive *Landgraf* and *Rodriguez.*

McGinnis also argues that the 1993 amendment to the Washington Civil Rights Act makes the Civil Rights Act of 1991 retroactively applicable for state claims, despite non-retroactivity for federal claims. In the 1993 amendment, Washington added the words "as amended" to Wash.Rev.Code § 49.60.030(2). It now provides that an injured party may obtain under state law "any other remedy authorized by this chapter or the United States Civil Rights Act of 1964 *as amended.*" This amendment does not change the analysis. The Civil Rights Act had not yet been amended when Kentucky Fried Chicken failed reasonably to accommodate Mr. McGinnis's disability and fired him.

That is the time which controls, under *Landgraf.* Punitive damages had not become available for conduct prior to November 1991, under the Civil Rights Act "as amended" at the time of Kentucky Fried Chicken's wrongful conduct. We have no choice under controlling law, and must vacate the punitive damages award.

### 2. Attorneys' Fees

Mr. McGinnis's attorneys applied for $138,672 in fees and $21,296.67 in costs. They applied under Washington law, which entitled Mr. McGinnis to "cost of suit including a reasonable attorney's fees...." Wash.Rev. Code § 49.60.03(2). The Washington Supreme Court has held that "we look to federal authority for guidance" in resolving issues of reduction in fees for circumstances not mentioned in the statute. *Blair v. Washington State University*, 108 Wash.2d 558, 740 P.2d 1379, 1385 (1987).

The district judge carefully reviewed the application, and made several deductions. He subtracted $5,250 for time spent on the dismissed common law claims, $6,180 for duplicative work by one of the attorneys, and $300 in costs for graphics obtained but not actually used at trial.

Kentucky Fried Chicken argues that the district court should have subtracted two thirds of the attorneys' fees claim because Mr. McGinnis lost on two out of three of his claims, intentional infliction of emotional distress and negligent infliction of emotional distress. The company argues that "since two out of three claims were dismissed, two thirds of the total hours spent on the case up to that point should have been deducted from the lodestar." This makes no practical sense.

We cannot imagine why a lawyer would allocate equal hours to each claim. The company argues that Mr. McGinnis achieved "only partial or limited success," so his attorneys' fees award should be commensurately reduced under *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). But as to the compensatory damages he sought, Mr. McGinnis was completely successful, despite the dismissals.

The theory upon which his victory was based had little practical significance. He even recovered damages for emotional distress, substantially the same money which would have been the subject of his dismissed common law claims. When the claim actually recovered on shares many of the same aspects as the dismissed claims, the Washington courts do not require a pro rata dollar reduction for each losing claim. *Blair*, 740 P.2d at 1386. The district court made a finding and a deduction for the time actually spent on the unsuccessful claims, and did not abuse his discretion with regard to the amount of the reduction. *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1481 (9th Cir.1992).

■ The company also argues that the district court should have subtracted more money than it did for duplicative time. The district court found that "51.5 hours of Ms. Rose's time at $120 an hour, or $6,180, should be deducted because of duplication of plaintiff's counsel's efforts at the immediate pretrial stage." The company argues that this was a simple case not requiring two attorneys or anywhere near the time charged, because "McGinnis presented only eleven witnesses" and the case "was not 'document-intensive.'" The district judge considered this contention. He took note that "[t]he amount sought is substantially less than the total fees and costs incurred by the defendant in defending the case." The district judge took special note of the vigor with which the case was unsuccessfully defended. The company's argument might have more weight if it had not found it necessary to spend considerably more money losing than its adversary spent winning.

■ Although the judge made no rote recitation of the factors we announced in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), when ruling on the appropriate amount of fees, no rote recitation is necessary. His decision gives us no basis for doubting that he was familiar with controlling law, and Kentucky Fried Chicken has not pointed to a *Kerr* factor which the judge failed to consider. A judge may consider all the factors without talking about all of them, because most are not matters on which anything is at issue or needs to be said. The company's quarrel is

with how much money the judge subtracted after consideration of the appropriate factors. That was a matter for the district judge's discretion, which he did not abuse. *Oviatt*, 954 F.2d at 1481.

■ In its supplemental brief, filed after *Landgraf* came down, Kentucky Fried Chicken claims the fees should be reduced if Mr. McGinnis loses on the punitive damages issue. The district judge recognized that the Supreme Court had granted certiorari on the question of retroactivity of the Civil Rights Act amendments, and that the punitive damages award would be vacated if the Supreme Court ruled as it ultimately did. He said he would award the same amount, $148,238.97 for attorneys' fees and costs after the deductions he made, regardless of whether the punitive damages award survived:

> The Ninth Circuit has ruled that the 1991 amendments are retroactive; therefore, punitive damages would be available in a case such as this. The United States Supreme Court has agreed to review the question whether the 1991 amendments are retroactive. If that rule of law is changed as a result of review by the Supreme Court, the punitive damages award herein may have to be vacated. In order to avoid further litigation over attorney fees at that point, the court now finds that the same award of fees and costs would be made if only compensatory damages, and not punitive damages, had been recovered by the plaintiff.

But that does not end the matter. We have to decide whether the district judge's decision to award the same amount regardless of whether the punitives award survived constituted an abuse of discretion. The Washington courts look to federal law when state decisions do not completely decide all the issues surrounding an award of attorneys' fees. *Blair v. Washington State University*, 108 Wash.2d 558, 740 P.2d 1379, 1385–86 (1987). This is such a case, and under controlling federal law, the district court erred on this issue.

■ The Supreme Court has held that the district court must answer the question, "[D]id the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The time, to be compensated in an award, must be "reasonable in relation to the success achieved." *Id.* at 436, 103 S.Ct. at 1941. It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the "extent of success" and the amount of the fee award. *Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992).

■ Where the relief sought and obtained is limited to money, the terms "extent of success" and "level of success" are euphemistic ways of referring to money. Mr. McGinnis's lawyers won most of his award in a way which could not survive *Landgraf,* because it was in the form of punitive damages rather than lost earnings or emotional distress. Because of *Landgraf,* his "extent of success" dropped from $234,000 to $34,000. Lawyers might reasonably spend $148,000 worth of time to win $234,000. But no reasonable person would pay lawyers $148,000 to win $34,000. The "private attorney general" theory allows the fee award to exceed what a reasonable individual would pay lawyers for the benefit conferred on him. Nevertheless, under *Hensley* and *Farrar,* the district court abused its discretion by expressly refusing to relate the extent of success to the amount of the fee award. The "private attorney general" theory lets the attorneys recover more than the benefit to their client would make reasonable, because they also confer benefits on others throughout society by winning a civil rights claim. But the benefit is not infinite. What the lawyers do for their actual client is an important measure of "extent of success." The district court must reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success.

*3. Fees on Appeal*

Mr. McGinnis requests attorneys' fees on appeal. Because he is not a prevailing party on appeal, he is not entitled to fees. *Almodovar v. Reiner,* 832 F.2d 1138, 1142 (9th Cir.1987). Kentucky Fried Chicken, though the prevailing party, did not request fees in its opening brief pursuant to Circuit Rule 39-1.6. Therefore, Kentucky Fried Chicken is also not entitled to fees. *United States v.*

*City and County of San Francisco,* 990 F.2d 1160, 1161 (9th Cir.1993). The parties shall bear their own costs.

We VACATE the judgment, and REMAND. The district court shall enter judgment for the compensatory but not the punitive damages, and shall redetermine attorneys' fees in accord with the discussion above.