REINHARDT, Circuit Judge,
concurring:
I fully concur in the majority opinion. I write separately, however, to explain why I would uphold the award in this case whether or not we considered the $360,000 settlement with the Santa Barbara defendants. In short, I would uphold the fee award even if the only monetary benefit to plaintiffs was the $5,000 verdict. I would do so for two reasons: (1) although the verdict was low in comparison to the fees sought by the attorneys, this litigation achieved significant non-monetary benefits for society, and (2) the entire context of the case, including the fact that plaintiffs had to overcome a robust defense, shows that the amount of time expended was necessary to vindicate the plaintiffs’ rights, even if the only benefit that had accrued had been the $5,000 in damages awarded by the jury. Plaintiffs’ counsel should be fully compensated for this effort. The defendants, relying in part on Farrar v. Hobby, suggest that we should ignore all other considerations, and that the fee award should be reduced solely based on a comparison between the verdict and the fee award. That position, however, is unsupported by Farrar, our case law, and the motivating principles of 42 U.S.C. § 1988. Accordingly, I agree with the majority that the district court did not abuse its discretion by awarding $1.2 million in attorney’s fees — a 10% reduction from the cost of the •time and work counsel expended on this case.
As an initial matter, there is a strong presumption that the lodestar — the amount of hours reasonably expended on the litigation multiplied by a reasonable hourly rate — is a reasonable fee to be awarded under 42 U.S.C. § 1988. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010); Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 564-65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). This presumption is based on the premise that a fee under § 1988 must be “sufficient to induce a capable attorney to undertake the representation” in order to advance the private enforcement of federal civil rights laws. Perdue, 559 U.S. at 552, 130 S.Ct. 1662; see also S. REP. NO. 94-1011, at 6 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5913. Once the lodestar is calculated, the district court can look to “other considerations” to determine whether this presumptively reasonable fee should be adjusted either upward or downward. Delaware Valley, 478 U.S. at 565, 106 S.Ct. 3088.
In Farrar v. Hobby, a particularly unsympathetic case, the Supreme Court created a limited exception to the normal calculation of fees. 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In that case, the State of Texas temporarily closed down a school for delinquent, disabled, and disturbed teens after a student of the center died. The owner of the center, Joseph Farrar, was indicted for murder because of his failure to administer proper medical treatment. Id. at 105-06, 113 S.Ct. 566. Farrar subsequently sued the Lieutenant Governor of Texas, William Hobby, as well as several other state employees who had participated in the events leading to the *670 closing of.the school. Id. at 105, 113 S.Ct.' 566. He sought $17 million in damages, alleging that he had been deprived of liberty and property without due process by means of malicious prosecution. Id. The jury determined that Farrar had been deprived of a civil right, but it awarded zero damages. Despite the wholly technical nature of Farrar’s victory, and the fact that his law suit achieved no significant public purpose, his counsel sought $280,000 in fees. The Supreme Court forcefully denied this fee award, and held that when a plaintiff, like Farrar, achieves only technical or de minimis success, a district court “may lawfully award low fees or no fees” without calculating the lodestar or considering the other factors, id. at 114-15, 113 S.Ct. 566 (emphasis added), because the degree of the plaintiffs overall success is the “ ‘most critical factor’ in determining the reasonableness of a fee award.” 506 U.S. at 114,113 S.Ct. 566.
In casting the critical fifth vote in Far-rar, Justice O’Connor explained in her separate opinion that not every nominal damage award is a purely technical or de minimis victory and that, when considering the degree of overall success, a court should consider more than the monetary amount awarded by a jury. See id. at 120-21, 113 S.Ct. 566. In particular, she wrote, courts should consider whether the plaintiff vindicated important rights or prevailed on significant legal issues “even though no actual damages are proved.” Id. at 121, 113 S.Ct. 566. Since Farrar had done neither of these things, Justice O’Connor agreed that his victory was solely a technical one, and that in his case a denial of attorney’s fees was more than appropriate. It is important, however, that Justice O’Connor did not suggest that where actual damages are recovered that are not de minimis it is necessary for the plaintiff to establish in addition that he secured some overall societal benefit as well.
Our court has interpreted Farrar as having two central holdings. First, a district court may award little or no fees to a plaintiff who has achieved solely a de minimis victory, but that it should not do so if the plaintiffs lawsuit achieved significant non-monetary results for himself or other members of society. See McCown v. City of Fontana, 550 F.3d 918 (9th Cir.2008) as amended 565 F.3d 1097, 1105 (9th Cir.2009); Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir.1996). Second, a district court abuses its discretion when it fails to consider the degree of success achieved by the plaintiff when determining a reasonable fee award. See Morales, 96 F.3d at 362. Nothing in these cases suggests that the extent of victory is measured solely by the amount of the award. Indeed, a small award may represent a complete victory.[1]
I fully agree with the majority that unlike Farrar, this is not a case in which the *671 district court could have awarded low or no fees without calculating the lodestar or considering the other factors. Wholly aside from the monetary considerations, this litigation resulted in significant public benefits. Our first opinion in this case clarified what probable cause is necessary to justify a warrant for a nighttime SWAT raid, a constitutional question of first impression in this Circuit. Furthermore, the litigation resulted in a verdict against the City of Santa Maria, exposing an unconstitutional practice by that City’s police department. See Wilcox v. City of Reno, 42 F.3d 550, 556 (9th Cir.1994) (“Exposing an unconstitutional policy [by the police department] does a great deal more than finding a plaintiffs rights have been infringed upon in some unspecified way. The police department itself, and the community at large benefit from a finding of this sort.”) (affirmatively quoting the district court’s holding). Together, these achievements offer clear and important guidance to magistrate judges, to the City, and to other municipalities, which should reduce the likelihood that innocent individuals will be unnecessarily subjected to intrusive searches of their homes.
Since the Farrar exception does not apply, we must presume that the lodestar is reasonable unless other considerations suggest otherwise. See, e.g., Perdue, 559 U.S. at 552, 130 S.Ct. 1662. Here, the other considerations do not. The context of this case strongly suggests that the amount awarded by the district judge was a reasonable one, regardless of the disparity in the amount of attorneys fees required to obtain a comparatively small damage award. In particular, it is important that this case required an inordinate amount of time and labor in order to overcome an especially robust defense. Accordingly, a high award of attorneys’ fees is reasonable.
Here, the plaintiffs spent 2321.32 hours pursuing claims against the Santa Maria defendants between 2006 and 2013, and there is no reason to believe that their counsel billed more than that which was necessary to win. First, all of the plaintiffs’ attorneys spent less than an average of 70 hours per year on this matter. This number seems appropriate — if not low— given the complicated nature of this suit, the important interests at stake, and that it is a “highly atypical civil rights case where the plaintiffs lawyer engages in churning,” Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir.2008). Indeed, at least until the prior appeal, the defense counsel spent more hours on this case than plaintiffs’ counsel, which suggests that defense counsel believed this case was sufficiently complex and important to justify large amounts of attorney time. See Burgess v. Premier Corp., 727 F.2d 826, 840 (9th Cir.1984); see also Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir.1998) (“[T]he effort expended by the defendants suggests at least that they viewed the case as sufficiently complex and seriousf.]”); Pressley v. Haeger, 977 F.2d 295 (7th Cir.1992) (“Three lawyers toiled a total of 1272 hours on Pressley’s behalf. If this seems excessive in light of the stakes ... it was not excessive in relation to the need to overcome a defense that Haeger and the Village waged with 2041 hours of lawyers’ time.”).[2] Further, plaintiffs, who bore the burden of proof, had to expend hours to overcome the opposition by the defense, which had persuaded the district court to improperly grant summary judgment, necessitating a *672 prior appeal. See Burgess, 727 F.2d at 840; Robinson, 160 F.3d at 1275 (“[0]ne of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is ‘the responses necessitated by the maneuvering of the other side.’ ”)■ In short, plaintiffs’ attorneys were able to achieve not only the great public benefits that they did, but the amount of damages to which the plaintiffs were entitled, only because of the consistent hours that they put in to overcoming the City’s strong opposition. See Moreno, 534 F.3d at 1112 (“By and large, the court should defer to the winning lawyer’s professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.”). Plaintiffs’ attorneys should be fully compensated for this necessary effort.
The defendants ignore these considerations, and instead suggest that the fee award must be reduced because it is disproportionately large compared to the jury’s verdict. We have previously rejected similar arguments, and held that a reasonable fee must be determined “in light of the context of th[e] case,” “not based on [the court’s] own notion of the correct ratio between the amount of attorney’s fees and the amount the litigants recovered.” Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir.2013) (emphasis added).[3] To hold otherwise would unreasonably extend Farrar well beyond its core holding, and in doing so, destroy the motivating principles of § 1988.
The fundamental purpose of § 1988 is to ensure that victims of civil rights violations are able to obtain competent legal counsel who will make it possible for them to enforce their rights, including the compensation to which they are entitled on account of the violation of those rights. As the cost of litigation increases, it becomes more difficult for civil rights victims to afford competent counsel. Contingency agreements provide some redress, but not in cases in which the injury that the plaintiff suffered is comparatively small — even serious violations of civil rights do not necessarily involve serious physical injuries, and it may well be that the violation of a civil right justifies compensation in only a moderate amount. In such instances, finding a competent lawyer to effectively handle victims’ claims would be close to impossible without the incentives provided by § 1988.
Similarly, if we were to adopt a rule that limited attorney’s fees in civil rights cases to an amount that is commensurate with the damages received, it would cripple the ability of victims suffering low or moderate economic damages to find competent counsel to pursue claims involving the violation of their rights. First, jury verdicts regarding damages resulting from violations of civil rights are not easily predictable. They may well depend on the predilections of the average jury in the geographic location of the occurrence or even on the happenstance of the composition of a particular jury. Such verdicts, though perfectly *673 appropriate under the law, surely do not reflect the amount of time and effort that must necessarily be spent to win a civil rights case. Second, the astronomical costs of litigation can easily exceed moderate economic damages by a substantial multiplier. This is especially true in civil rights cases, in which municipalities often have significant non-monetary reasons to staunchly defend against such actions using the services of municipally-paid, salaried lawyers. Here, for example, the actual cost of plaintiffs’ counsels’ time was, without doubt, well over a million dollars. Perhaps the jury could have returned a verdict of $10,000 instead of $5,000; or perhaps $25,000, or even $100,000. Compared to the cost of litigation, any of these amounts would be insubstantial. If the measure of awardable fees was limited by the damages received or anything like them, the lawyers would not be compensated for time necessarily spent on the case, and most attorneys would be reluctant to undertake the representation.[4]
Thus, the defendants’ proposal, which places an undue emphasis on the proportionality between the monetary verdict and the fee award unreasonably ignores the central question of § 1988: how much in fees is reasonably necessary to permit individuals whose civil rights have been violated to obtain attorneys who will diligently and competently work to preserve their rights, even if the monetary award may be moderate? The defendants’ position would prevent plaintiffs’ counsel from being compensated for any hours reasonably expended in recovering damages in amounts that fairly measure the plaintiffs economic injury, would require that attorneys be compensated well under the market rate for similar legal services, and would, in effect, compel many victims of civil rights violations to forgo their rights to redress entirely.
As the Supreme Court has repeatedly stated, there is a strong presumption that the lodestar — the amount of hours reasonably expended on a ease multiplied by a reasonable hourly rate — is a reasonable fee sufficient to attract competent attorneys. See, e.g., Perdue, 559 U.S. at 552, 130 S.Ct. 1662; Delaware Valley, 478 U.S. at 564-65, 106 S.Ct. 3088; Stenson, 465 U.S. at 897, 104 S.Ct. 1541. Defendants’ proposed rule entirely ignores this lodestar based on a misguided sense of “proportionality.” If we were to adopt this untenable position, only attorneys who are either totally selfless or remarkably privileged would be able to expend the necessary, unpaid effort to advance these important rights, including attorneys whose employment at large corporate law firms allows them to dedicate a portion of their working hours to these causes pro bono. We are grateful for their contributions, but that is not the system envisioned by *674 § 1988. The rule urged by defendants would eviscerate that statute. For this reason, I concur.

. Occasionally, this court has questioned the validity of awarding attorneys’ fees substantially in excess of the amount recovered, but the prevailing view appears to be that which is explicated in the text infra. In McGinnis v. Kentucky Fried Chicken of California, for example, the panel applied federal law to a request for fees under a Washington state statute. 51 F.3d 805, 810 (9th Cir.1994). There, due to a change in controlling law, the plaintiff’s damages dropped from $234,000 to $34,000, but the district court declined to consider this change when determining an appropriate fee award. Id. In the circumstances of that case, the court determined, a reduction in fees should have been considered. Id. As we recently explained, however, a decision to lower attorney's fees from the lodestar should be based "in light of the context of the case” as a whole, not based "solely on the number of dollars” that the plaintiffs recovered. Gonzalez v. City of Maywood, 729 F.3d 1196, 1210 (9th Cir.2013).

. The record indicates that defendants spent more hours than plaintiffs on this case prior to the first appeal, but there is no information in the record about how many hours defendants spent on it after the first appeal.

. Although Farrar holds that the degree of success is the most important consideration, it does not hold that district courts must or even should ignore other considerations when determining a reasonable fee. Indeed, Farrar repeatedly used permissive language to convey this point. See Farrar, 506 U.S. at 114, 113 S.Ct. 566 ("If 'a plaintiff has achieve only partial or limited success, the [lodestar] may be an excessive amount.' ”) (emphasis added); Id. at 115, 113 S.Ct. 566 ("[T]he court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness[J”) (emphasis added); Id. ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.”) (emphasis added).

. Because only one plaintiff in this case received an award of actual damages while two recovered only nominal damages, it is possible that, in other circumstances, the fee award might be reduced to some extent to account for hours spent pursuing the two comparatively unsuccessful plaintiffs. See Hensley v. Eckerhart, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Such a reduction would be inappropriate in this case for several reasons, however. First, the defendant has not suggested that a reduction should be made on this basis and thus waived the issue. Second, since the plaintiffs’ claims have identical factual and legal, bases, it is unlikely that any significant amount of time spent pursuing the claims of the nominal damages plaintiffs was not also necessary to advance the more successful plaintiff’s claim. Third, plaintiffs who receive nominal damages are still prevailing parties entitled to fees under the statute unless their victory was merely technical or de minimis, see Farrar, 506 U.S. at 113-14, 113 S.Ct. 566, and as explained earlier, the important public benefits achieved in this case preclude the plaintiffs’ victory from being considered merely technical or de minimis.