IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BELLEVUE FARM OWNERS
ASSOCIATION, A Non-profit
Corporation; LAUREN BARRETT and
WILLIAM BARRETT, husband and wife
respectively, trustees of the Laurie
Barrett Residential Trust and of the Bill
Barrett Residential Trust; WEBSTER
AUGUSTINE III, an individual;
HOOPOE LLC, a Washington Limited
Liability Company; GIGI BIRCHFIELD
and MARK BAUTE, husband and wife;
TIMOTHY DOHERTY and CHRISTINE
DOHERTY, husband and wife; GLEN
CORSON and KIM KYLO-CORSON,
husband and wife; JANTANA
KUPPERMANN and BARUCH
KUPPERMANN, husband and wife;
RODNEY SMITH and MARY
MARGARET SMITH, husband and wife;
MATTHEW STRAIGHT and VERONICA
STRAIGHT, husband and wife; TOM
TUCCI and DIANE TUCCI, husband
and wife; and DANA PIGOTT, an
individual,

                              Respondents,

                      v.

CHAD STEVENS and "JANE DOE"
STEVENS, husband and wife,

                              Appellants,

No. 73794-5-I

DIVISION ONE

PUBLISHED OPINION

No. 73794-5-I/2

PETE FINDLEY and "JANE DOE"        )
FINDLEY, husband and wife;         )
CASCADE MOUNTAIN RENTALS LLC, )
a Washington limited liability company;   )
ROBERT STEVENS, an individual; and )
DOES 1 to 10, Inclusive,           )
                                   )
                      Defendants.  )        FILED: April 3, 2017
_____

SCHINDLER, J. — To establish abuse of process, the claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm caused by the abuse of process. Chad Stevens filed a counterclaim against Mark Baute for abuse of process. Stevens alleged as damages that he incurred attorney fees and costs as a result of abuse of process. We affirm the August 5, 2015 order to produce the "Attorney's Fees for Abuse of Process" spreadsheet. We also affirm denial of the motion to bifurcate liability and damages, lift the temporary stay of the August 5, 2015 discovery order, and remand.

FACTS

The original owners of the Friday Harbor Bellevue Farm property owned the waterfront portion of the property as tenants in common. In 1991, the owners recorded a "Grant Deed of Conservation Easement." In 1994, the owners recorded a short plat to create four lots and a common waterfront. In May 1997, the Bellevue Farm Owners Association (BFOA) recorded a declaration of protective covenants, conditions, and restrictions.

In 2005, Chad Stevens purchased 10 acres of waterfront property in the Bellevue Farm plat. Mark Baute and his spouse Gigi Birchfield own waterfront property located adjacent and to the south of Stevens' property. Baute and Birchfield also co-own

2

waterfront property with Jantana and Baruch Kuppermann adjacent and to the north of Stevens' property.

Baute was a BFOA board member and an attorney licensed to practice in California. Baute began representing BFOA in May 2012. In August 2012, BFOA board members clarified and amended the covenants, conditions, and restrictions and adopted a revocable license agreement.

In September 2012, BFOA filed a lawsuit against Stevens alleging violation of the covenants, conditions, and restrictions. In November, the court granted the motion to admit Baute pro hac vice. Baute acted as lead attorney in the lawsuit.

Stevens asserted a number of counterclaims against BFOA, BFOA board members, and other property owners (collectively, BFOA). Stevens alleged the 2012 clarification and amendments to the covenants, conditions, and restrictions and adoption of the revocable license agreement were unlawful. In counterclaim 12, Stevens asserts BFOA did not comply with the statutory requirements that govern a homeowner association, chapter 64.38 RCW. Stevens sought declaratory and injunctive relief.

In April 2013, the court revoked pro hac vice admission of Baute. The court found, in pertinent part:

> Mr. Baute's personal interest as a party plaintiff appeared to be causing a relatively straightforward lawsuit to be increasingly characterized by unprofessional personal invective, excessive and unnecessary pleadings, and a lack of civility between himself and counsel for the defendants.
>
> . . . ...Mr. Baute has ignored the court's warning and again engaged in unnecessary and intentionally provocative behavior that has only increased the level of personal antagonism and rancor that infects this litigation.
>
> . . . .

3

. . . Provocation is exactly the type of behavior the court had warned Mr. Baute to refrain from and that should no longer be tolerated.

. . . ...the Court is convinced that Mr. Baute's conduct continues to manifest an intentional disregard for this Court's directions and a flippant disregard for the clearly adverse effect his personal feelings of animosity and disrespect for the Defendants and their attorneys have had on the manner in which this lawsuit has been conducted.[1]

Stevens filed a motion for leave to file amended counterclaims to add a counterclaim against Baute and the marital community (collectively, Baute) for abuse of process, counterclaim 13. Stevens also alleged breach of fiduciary duty and sought damages against BFOA under chapter 64.38 RCW.

The abuse of process counterclaim alleged that during the course of the litigation, Baute engaged in conduct "based upon the existence of his ulterior motives and was coercion for the purpose of obtaining collateral advantage."

The conduct of Baute has been based upon the existence of his ulterior motives and was coercion for the purpose of obtaining collateral advantage not properly involved in the litigation process itself, and constitutes the misuse of the litigation process for purposes other than those which constitute legitimate litigation proceedings.
. . . As a result of the conduct of Baute, Defendant/Counterplaintiff Chad Stevens has been damaged.

Stevens alleged the litigation strategy was designed to harass Stevens and "needlessly increase" litigation costs. The counterclaim alleged that despite the April 2013 court order revoking pro hac vice admission, Baute "continued and continues to provide to the plaintiffs legal advice and engaged in the unlawful practice of law for the continued purpose of harming Stevens through use of the litigation process." Over the objection of BFOA and Baute, the court granted the motion to file the amended counterclaims on May 6. BFOA filed a demand for a jury trial.

---

[1] Some alterations in original, internal quotation marks omitted.

4

On June 13, 2014, Baute propounded interrogatories and requests for production of documents to Stevens, including a request to produce invoices for the legal fees and costs allegedly incurred for abuse of process.[2] In a June 19 letter, the special master directed the parties to "confer about how to approach this issue" and urged the parties to take steps to preserve attorney client privilege and attorney work product.[3]

In July 2014, Stevens filed a motion to stay discovery and a motion to file amended counterclaims. Stevens alleged Baute made assertions in pleadings that Baute knew were false, continued to harm Stevens through "the litigation process," and engaged in conduct designed to "harass" and "needlessly increase Stevens' litigation costs." Stevens alleged Baute was "liable for the attorney's fees and costs that

---

[2] The requests for production state, in pertinent part:

**DOCUMENT REQUEST NO. 43:**
Produce copies of the fee agreement or retainer agreement for each lawyer or law firm whose fees YOU seek to recover as damages for abuse of process.

. . . .

**DOCUMENT REQUEST NO. 49:**
Produce all DOCUMENTS, and law firm invoices, which reflect in any way the legal fees and costs YOU have incurred in this lawsuit, or the lawsuit brought against YOU by Mr. Campisi, which YOU contend are recoverable as damages for abuse of process by Mark Baute.

. . . .

**DOCUMENT REQUEST NO. 54:**
Produce copies of all law firm invoices, if any, from the South BFOA v. Stevens and Findley case which you contend reflect recoverable damages for abuse of process by Mr. Baute.

[3] The letter states, in pertinent part:

[BFOA counsel] has forwarded Plaintiff [Baute]'s Second Set of Interrogatories and Second Set of Requests for Production and suggests that the Special Master direct a timely and complete response to these requests. It would be inappropriate to issue a ruling without the parties having met and conferred as required by CR 26(1). The Special Master is available for a conference call, if necessary, after counsel have held a discovery conference.

. . . When attorney fees and costs are claimed as damages, . . . special care must be taken to preserve attorney client privilege and attorney work product because the case has not yet been heard. If the case is tried to a jury, it may be appropriate that the jury determine only the fact of damage, leaving the attorneys fee calculation to the trial judge. I am not aware of cases in which a jury evaluates the amount of attorney fees during trial.

I urge counsel to confer about how to approach this issue. It may be appropriate to seek a ruling from the trial judge before discovery of time sheets proceeds.

defendant Stevens has incurred as a result of Mr. Baute's abuse of process." Stevens alleged BFOA was "liable for the attorney's fees and costs that defendant Stevens has incurred because of their breach of fiduciary duty to him." Stevens argued the court should stay discovery on the counterclaims for breach of fiduciary duty and abuse of process, counterclaim 12 and counterclaim 13.

BFOA did not object to filing the amended counterclaims. BFOA objected to the motion to stay discovery on counterclaim 12 and counterclaim 13. The court denied the motion to stay discovery on the counterclaims.

In late August, BFOA filed a motion to compel Stevens to respond to the June 13, 2014 interrogatories and requests for production. The motion states BFOA sought information that was "not privileged" on "the amount of legal fees that [Stevens] claims are linked to any alleged abuse of process by Mr. Baute." The discovery master granted the motion to compel based on the "agreement of the parties." The order states Stevens "is not at this time required to produce privileged time sheets."

Stevens filed a motion to stay the order of the special master granting the motion to compel and certification to the appellate court. The court denied the motion to stay. The court ruled the discovery master "was correct in ruling that [Stevens'] attorney's fees are discoverable because he had alleged that those fees are his damages under Counterclaims 12 and 13." The court ruled that "where attorney's fees constitute an element" of tort damages, "they must be proved to the trier of fact." But the court granted the request to certify "whether [Stevens'] alleged damages of attorney fees/costs under abuse of process and breach of fiduciary duty are discoverable, where those fees/costs are the only allegation of proximately caused harm under each claim."

On February 23, 2015, Stevens submitted supplemental responses to the interrogatories and requests for production. Stevens states he is entitled to $204,000 in attorney fees and costs as damages for abuse of process and $185,000 in attorney fees and costs as damages for breach of fiduciary duty under chapter 64.38 RCW. Stevens did not provide attorney time sheets.

BFOA filed a motion for sanctions under CR 37. BFOA argued the responses did not allow BFOA to evaluate whether the attorney fees were the proximate cause of breach of fiduciary duty or abuse of process. Baute propounded additional discovery requests asking for production of attorney fee invoices including time entries and task descriptions.[4]

The discovery master conducted an in camera review of the attorney billing records. On March 31, the special master issued a letter ruling. The discovery master denied the motion for CR 37 sanctions.

The discovery master ruled that to establish liability for breach of fiduciary duty and abuse of process, Stevens must prove the fact of damages.

> [T]o establish liability on his counterclaims, defendant must prove the fact of damage, and his only claimed damages are his attorney fees. Permitting defendant to claim the full amount of his attorney fees without allowing plaintiffs' discovery of them violates plaintiffs' right to a fair trial.

---

[4] The requests for production state, in pertinent part:

**REQUEST FOR PRODUCTION NO. 28:** Produce the invoices for [your attorney]'s law firm in this case.

. . . .

**REQUEST FOR PRODUCTION NO. 34:** Produce the invoices, work[ ]sheets and documents which reflect the time entries and/or task descriptions which reflect the work done by [your attorney] that is listed in response to interrogatory number 39 for [your attorney]'s time charges for abuse of process damages.

7

The special master agreed BFOA was entitled to determine whether the attorney fees were proximately caused by the alleged breach and harm.

> Plaintiffs are correct that plaintiffs are entitled to test the validity of the claimed fees by examining whether they were proximately caused by plaintiff's alleged misconduct, and whether they are overstated, duplicated, or unrelated to the issue, etc.

However, based on the in camera review, the special master concluded that there "is no way to reasonably redact" attorney communications and work product and that producing the billing records would disclose information protecting the attorney client privilege and work product.

> However, a review of the billings indicates that producing them would disclose both descriptions of attorney/client communications and attorney work product, i.e. strategy, areas of research, names of individuals being interviewed, etc. Of course, many of the entries are innocuous . . . . But there is no way to reasonably redact sensitive entries and permit examination of the rest. It would be an overly burdensome and expensive task and the redacted billings would not give an accurate picture of what the attorney fees are.

Because disclosure would violate the attorney client privilege and work product, the special master concluded production of the attorney billing records before a trial on liability was not inappropriate.

> The Discovery Master cannot appropriately order that defense counsel produce these billing records before the liability trial without invading the attorney/client privilege and work product doctrine protections. Disclosure of the billings pre-trial would compromise defense counsel's ability to represent his client.

As a solution to the competing interests, the special discovery master suggested the parties stipulate to the fact of damages and to bifurcate the trial on liability and damages.

> One solution is for the parties to stipulate (1) to the fact of damage; (2) to plaintiffs' full discovery of defendant's fees and costs post trial, as is

customary, if the jury finds for defendant; [and] (3) to [the] Judge['s] . . . determination of the amount of damages after trial if liability is established.

A commissioner of this court denied discretionary review of the question certified by the court. "In light of the discovery master's suggested solution, which has yet to be considered by the trial court, appellate review is not warranted at this time."

BFOA refused to stipulate to the fact of damage or bifurcation and filed a motion to reconsider the March 31, 2015 decision. Stevens filed a motion for a protective order.

On April 27, the discovery master filed a report and proposed order on the motion to reconsider and the motion for a protective order. The report states the "two motions present important issues that are best resolved by the trial judge."

The special master states Stevens must prove the fact of damage and the requested billing information is necessary to determine whether his attorney fees and costs are causally related to the counterclaims. But the "redacted billings would not give a true picture of the fees claimed."

> Defendant cannot establish all required elements of these two causes of action at trial without proving at least the fact of damage. The requested billing information is necessary so that plaintiffs (counterclaim defendants) can determine whether defendant's claimed damages, i.e. his costs and attorney fees, are in fact causally related to the counterclaims. The Discovery Master has reviewed the billings and believes redacted billings would not give a true picture of the fees claimed. Defendant cannot be permitted to present to the jury evidence of attorney billings if plaintiffs are denied the right to examine those billings in discovery.

The proposed order states attorney fees and costs are Stevens' "only claimed damages" for violation of chapter 64.38 RCW and abuse of process and that Stevens "waived his attorney client privilege and work product protections by placing protected information at issue." The proposed order requires Stevens to produce all invoices,

9

dates, time entries, and spreadsheets related to his attorney billings since July 2012 but with redaction of all "task descriptions."

> Defendant shall produce all invoices, dates, time entries and spreadsheets for attorney billings in this case for all attorneys, <u>without task descriptions</u>, for work performed from July 2012 through the present. The spreadsheet labeled "Attorney's Fees (Comprehensive)," submitted to the Discovery Master for in camera review on March 13, 2015, shall be produced in its entirety, <u>without task descriptions</u>.[5]

By contrast, the proposed order requires Stevens to produce two spreadsheets— "Attorney's Fees for Abuse of Process" and "Attorney's Fees for Breach of RCW 64.38"— "without redaction."

> Defendant shall also produce in their entirety, <u>without redaction</u>, the two spreadsheets labeled "Attorney's Fees for Abuse of Process" and "Attorney's Fees for Breach of RCW 64.38" submitted to the Discovery Master for in camera review on March 13, 2015.[6]

The special master notes that because the trial court previously declined to stay discovery on the breach of fiduciary duty and abuse of process counterclaims, the court would need to "decide whether some other trial management technique should be employed to protect defendant's work product and privilege in his billing records while granting plaintiffs the discovery necessary to guarantee a fair trial."

> The Discovery Master had proposed in an earlier ruling that the parties stipulate to the fact of damage in the liability phase of trial on counterclaims 12 and 13, while reserving the amount of damage to later determination by the court. The proposal was rejected, as is the parties' right. The trial court has previously declined to stay or bifurcate Counterclaims 12 and 13. Only the trial court can decide whether some other trial management technique should be employed to protect defendant's work product and privilege in his billing records while granting plaintiffs the discovery necessary to guarantee a fair trial.

---

[5] Emphasis added, italics omitted.

[6] Emphasis added, italics omitted.

Following a hearing, the court adopted the report and proposed order and on August 5, 2015, entered the "Order on Discovery Master's Report and Proposed Order Regarding Plaintiffs' Motion for Reconsideration and Defendant's Motion for Protective Order." The court ordered Stevens to produce the attorney billing records and spreadsheets by August 21. The order also states, "If Counterclaim 12 or 13 go to the jury, the Court has concluded the jury will decide the appropriate amount of attorney's fees."

Stevens filed a motion for an emergency stay and discretionary review. We granted interlocutory discretionary review and entered a temporary stay of the August 5, 2015 order.

After we accepted review, BFOA filed a motion to strike the jury demand for the counterclaim alleging breach of fiduciary duty in violation of chapter 64.38 RCW and damages, counterclaim 12.[7] The court granted the motion.[8] Therefore, the only question on appeal is whether the trial court erred in entering the order that requires Stevens to produce the spreadsheet for "Attorney's Fees for Abuse of Process."

ANALYSIS

Abuse of Process

Stevens asserts attorney fees and costs is not an element of a cause of action for abuse of process that a jury must decide. Stevens argues Washington law requires proof of only two elements: (1) the existence of an ulterior purpose to accomplish an

---

[7] See RCW 64.38.050 (court may award reasonable attorney fees to prevailing party for violation of chapter 64.38 RCW).

[8] We grant Stevens' motion to allow the trial court to enter the order. See RAP 7.2.

11

object not with the proper scope of process and (2) an act in the use of process that is not proper in the regular litigation of the proceedings. We disagree.

In Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 699 P.2d 217 (1985), the Washington Supreme Court addressed the elements of abuse of process. The Supreme Court cites the Court of Appeals decision in Fite v. Lee, 11 Wn. App. 21, 27, 521 P.2d 964 (1974), that characterized the existence of an ulterior purpose and an improper act as the "essential elements" of abuse of process. Sea-Pac Co., 103 Wn.2d at 806. The Fite court identifies the "essential elements" of the tort of abuse of process as:

> (1) [T]he existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.

Fite, 11 Wn. App. at 27.

But the Washington Supreme Court also adopted the Restatement (Second) of Torts § 682 (1977) definition for abuse of process. Sea-Pac, 103 Wn.2d at 806. Restatement (Second) of Torts § 682 defines the tort of abuse of process as follows:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

The plain and unambiguous language of the Restatement (Second) of Torts § 682 states that an essential element of the tort of abuse of process is "harm caused by the abuse of process." To establish the tort of abuse of process, a claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm

proximately caused by the abuse of process. Where the claimant seeks damages for attorney fees and costs incurred as a result of abuse of process, those damages are an element of the tort cause of action that the claimant must prove and the fact finder must determine.

Stevens relies heavily on Hough v. Stockbridge, 152 Wn. App. 328, 216 P.3d 1077 (2009), to argue damages for attorney fees and costs are not an essential element of abuse of process. Hough does not support his argument.

Hough sued the Stockbridges for defamation and malicious prosecution. Hough, 152 Wn. App. at 334. The Stockbridges filed a counterclaim for abuse of process. Hough, 152 Wn. App. at 334. The arbitrator awarded the Stockbridges $5,000 in damages and $20,315 in attorney fees. Hough, 152 Wn. App. at 334. Hough filed a demand for trial de novo. Hough, 152 Wn. App. at 334.

The Stockbridges called their former attorneys to testify at trial. Hough, 152 Wn. App. at 335. The court instructed the jury on the essential elements of a claim for abuse of process, including an instruction based on the Restatement (Second) of Torts § 682, Jury instruction 10. Jury instruction 10 stated, " 'One who uses a legal process against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by his abuse of process.' " Hough, 152 Wn. App. at

343.[9]

The jury found Hough liable for abuse of process. Hough, 152 Wn. App. at 336. The jury awarded the Stockbridges $200,500.00 in damages. The damages the jury awarded included $30,467.08 for attorney fees and costs. Hough, 152 Wn. App. at 336. Because Hough did not improve his position in the trial de novo, the trial court awarded the Stockbridges $40,844.50 in attorney fees and costs under Mandatory Arbitration Rule 7.3. Hough, 152 Wn. App. at 336.

On appeal, Hough argued the jury instructions defining "abuse of process" did not correctly state the law. Hough, 152 Wn. App. at 341-42. Hough also argued substantial evidence did not support the verdict and the trial court erred in awarding attorney fees and costs under MAR 7.3. Hough, 152 Wn. App. at 344-50. Hough did not challenge, and the court notes it does not address, the jury award of damages. Hough, 152 Wn. App. at 348 n.1.

---

[9] Jury instructions 7, 8, and 9 also defined the elements of abuse of process. Hough, 152 Wn. App. at 342-43. Jury instruction 7 stated:

" 'Abuse of process' is the misuse of the power of the court. It is an act done in the name of the court and under its authority by means of use of a legal process not proper in the conduct of a proceeding for an ulterior purpose(s) or motive(s)."

Hough, 152 Wn. App. at 342. Jury instruction 8 stated the essential elements of a claim of abuse of process are:

"(1) The existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) An act in the use of legal process not proper in the regular prosecution of the proceedings.
"The test as to whether there is abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process; or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do."

Hough, 152 Wn. App. at 343. Jury Instruction 9 stated, " 'The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive. The purpose for which the process is used, once it is issued, is the only thing of importance.' " Hough, 152 Wn. App. at 343.

The court held the jury instructions "correctly state[d] the law on abuse of process." Hough, 152 Wn. App. at 343. The court rejected the argument that substantial evidence did not support the jury verdict. Hough, 152 Wn. App. at 346-47.

> A jury could, and did, infer from the frequency, number, and nature of Mr. Hough's motions and other process that the documents were not only improper but filed to harass the Stockbridges and increase their cost of litigation. . . . We will not disturb the jury's verdict. . . .
> . . . And, moreover, there was ample evidence of damages in this record.

Hough, 152 Wn. App. at 346-47.

Hough argued that the jury should have determined attorney fees under MAR 7.3. Hough, 152 Wn. App. at 347-49. The court disagreed. Because Hough did not improve his position at trial, MAR 7.3 authorized the trial court to award attorney fees and costs.

> Here, the jury awarded the Stockbridges $200,500 in damages. The arbitrator awarded the Stockbridges only $5,000. It was Mr. Hough who requested trial de novo. And it was Mr. Hough who did not improve his position at trial. MAR 7.3, then, authorized the court's attorney fees award.

Hough, 152 Wn. App. at 349.

In dicta, the court addressed circumstances where a jury determines attorney fees and costs, such as equitable indemnification where "the defendant's wrongful act causes the plaintiff to be involved in litigation with others." Hough, 152 Wn. App. at 348 (citing Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 759, 162 P.3d 1153 (2007)). The court states attorney fees are "determined by the trier of fact only when the measure of the recovery of attorney fees is an element of damages."

Hough, 152 Wn. App. at 348.[10] But Hough "cite[d] no authority for the proposition that attorney fees are an element of damages in an abuse of process case." Hough, 152 Wn. App. at 348.

As previously addressed, in Sea-Pac, the Supreme Court adopts the Restatement (Second) of Torts § 682 and identifies harm caused by abuse of process as an element of the tort cause of action. Sea-Pac, 103 Wn.2d at 806. Here, there is no dispute Stevens alleged he incurred attorney fees as a result of abuse of process and his only damages are attorney fees and costs.

We hold Stevens must prove damages as an element of the claim for abuse of process and the jury must determine whether he is entitled to attorney fees and costs proximately caused by abuse of process. See Sofie v. Fibreboard Corp., 112 Wn.2d 636, 646, 771 P.2d 711, 780 P.2d 260 (1989) (constitutional right to a jury determination of damages); see also Palmer v. Jensen, 132 Wn.2d 193, 197, 937 P.2d 597 (1997) ("Determination of the amount of damages is within the province of the jury.").

Waiver

Stevens contends that under Pappas v. Holloway, 114 Wn.2d 198, 787 P.2d 30 (1990), the doctrine of implied waiver applies only in legal malpractice cases. In Pappas, the Washington Supreme Court adopted the test from Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine implied waiver of attorney client privilege. Pappas, 114 Wn.2d at 207-08.

> [W]here the following three conditions are satisfied, an implied waiver of the attorney-client privilege should be found: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting

---

[10] See RCW 64.38.050 ("Any violation of the provisions of this chapter entitles an aggrieved party to any remedy provided by law or in equity. The court, in an appropriate case, may award reasonable attorneys' fees to the prevailing party.").

party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Pappas, 114 Wn.2d at 207.

We recently considered and rejected the same argument in Steel v. Olympia Early Learning Center, 195 Wn. App. 811, 381 P.3d 111 (2016). In Steel, we concluded the Supreme Court in Pappas did not limit application of the Hearn test to legal malpractice cases. Steel, 195 Wn. App. at 823-24.

> Petitioners first argue that our legal precedent limits application of implied waiver of the attorney-client privilege to legal malpractice claims. We disagree.
> Both parties rely primarily on Pappas and [Dana v. Piper, 173 Wn. App. 761, 295 P.3d 305 (2013),] to support their contentions regarding the application of implied waiver outside the legal malpractice context. . . . We disagree and instead conclude that the application of the implied waiver doctrine is not so limited.
>
> . . . .
> . . . [W]hile both Pappas and Dana applied the implied waiver doctrine in the context of legal malpractice, neither case expressly limited application of the doctrine solely to legal malpractice cases.

Steel, 195 Wn. App. at 823-24.[11]

Under Hearn, Stevens impliedly waived the attorney client privilege and work product by claiming attorney fees as his only damages for abuse of process. Because discovery is necessary to determine the proximate cause of his alleged harm, Stevens waived the right to assert attorney client privilege and work product for attorney fees and cost billing records.

---

[11] Emphasis in original.

17

Bifurcation

Even if proof of damages and attorney fees and costs is an element of abuse of process, Stevens argues the court erred in refusing to stay discovery and bifurcate the abuse of process counterclaim.

We review discovery orders for abuse of discretion. Fellows v. Moynihan, 175 Wn.2d 641, 649, 285 P.3d 864 (2012); Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 778, 819 P.2d 370 (1991). A court abuses its discretion when the decision is based on untenable grounds, is made for untenable reasons, or is manifestly unreasonable. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

Stevens asserts the court did not balance the prejudice that will result from disclosure of attorney client privilege and work product. Contrary to his assertion, the record reflects the court considered bifurcation at length during the hearing on the discovery master's report and proposed order to compel disclosure of the attorney billing records. The parties addressed the special master's previous suggestion that the court bifurcate liability and damages. Although BFOA refused to stipulate to the fact of damages, Stevens argued the court should bifurcate the trial on liability and damages to protect attorney client privilege and work product. BFOA argued the discovery was necessary to determine whether the attorney fees incurred were proximately caused by the alleged abuse of process. The court recognized "the unfairness to [BFOA]" but states, "I also have a concern, as the discovery master does, about the unfairness to Mr. Stevens." But the court concluded the proposal to produce the spreadsheet for the abuse of process legal fees was "the best we can do to try to protect Mr. Stevens' right,

given the fact that he's the one who filed the claim and has put the damages at issue here." The trial court did not abuse its discretion in refusing to bifurcate.

Nonetheless, we note that at oral argument, the BFOA attorney agreed Stevens is entitled to discovery of the attorney fees and costs incurred by BFOA and Baute to establish the reasonableness and amount of an award of damages for attorney fees and costs.[12] On remand, the court has the authority to reconsider and decide whether to bifurcate the trial on the counterclaim for abuse of process from other claims. Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 300, 840 P.2d 860 (1992) (an order that adjudicates fewer than all claims is subject to revision at any time before entry of a final judgment as to all claims and the rights and liabilities of all parties).

We affirm the August 5, 2015 discovery order, lift the stay, and remand.[13]

WE CONCUR:

---

[12] A comparison of hours charged by opposing counsel is relevant to determine the reasonableness of attorney fees for the prevailing party. See McGinnis v. Ky. Fried Chicken of Cal., 51 F.3d 805 (9th Circ. 1994); Citgo Petroleum Corp. v. Krystal Gas Mktg. Co., 466 F. Supp. 2d 1263 (N.D. Okla. 2006); Blowers v. Lawyer's Coop. Publ'g Co., 526 F. Supp. 1324 (W.D. N.Y. 1981); Heng v. Rotech Med. Corp., 720 N.W.2d 54, 65 (N.D. 2006).

[13] We deny BFOA's request for an award of attorney fees on appeal under RAP 18.9.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 APR -3 AM 8: 39